## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

WILLIAM GALLUCCI      )
P.O. Box 99         )
Edinburg, Virginia 22824    )
             )
   Plaintiff,       )
             )
   v.          )
             )
MARK L. SCHAFFER     )
11804 Hunting Ridge Court   )
Potomac, Maryland 20854   )
             )
   And        )  C.A. No._____
             )
ASHCRAFT & GEREL, LLP   )
2000 L Street, N.W.     )
Suite 400         )
Washington, D.C. 20036.   )
             )
   Serve On:      )
             )
   ROBERT M. REINER   )
   10 Liliy Pond Court    )
   Rockville, Maryland 20852 )
             )
   And        )
             )
MARTIN E. GEREL     )
One Central Plaza      )
Suite 1002        )
11300 Rockville Pike     )
Rockville, Maryland 20852   )
             )
   And        )
             )
JAMES A. MANNINO    )
10806 Pleasant Hill Drive   )
Potomac, MD 20854-1511   )
             )
   Defendants.      )
             )

## **COMPLAINT**

Plaintiff, William T. Gallucci, by and through his undersigned attorneys, hereby complains and alleges as follows:

## INTRODUCTION

1.  This action arises out of Defendants' representation of Plaintiff, William T. Gallucci ("Mr. Gallucci") in connection with injuries sustained by Mr. Gallucci while working at the United States Bureau of Engraving (the "Bureau"), a part of the United States Treasury ("Treasury"). While employed by the Bureau as an apprentice engraver, Mr. Gallucci was injured on the job. He suffered serious disability as a result.

2.  After being injured, Mr. Gallucci engaged Mr. Schaffer and the Ashcraft & Gerel law firm to represent him *vis a vis* the federal government on issues arising from his injuries while employed at the Bureau. Mr. Schaffer actively represented Mr. Gallucci *vis a vis* the government on Mr. Gallucci's claims under the Federal Employees' Compensation Act from at least October of 1973 to at least late-August of 1976.

3. Throughout his representation of Mr.Gallucci, Mr. Schaffer failed to advise Mr. Gallucci of his rights under 5 U.S.C. § 8113 of the Federal Employees' Compensation Act ("FECA" or the "Act"), and further failed to advocate on Mr. Gallucci's behalf for the increased benefit payments clearly due to Mr. Gallucci under this statutory component of the Act.

4. Because Mr. Gallucci was an "apprentice" at the time he was injured, the plain text of the Act entitled him to receive worker's compensation benefits as though he successfully participated in and completed the apprentice program and advanced to a journeyman position. Because Mr. Schaffer failed to advise of Mr. Gallucci or adequately represent him with respect to his rights under the Act, Mr. Gallucci was underpaid for nearly 30 years.

## THE PARTIES

5.    Plaintiff William Gallucci ("Mr. Gallucci") is a citizen and resident of the Commonwealth of Virginia.

6.    Defendant Mark A. Schaffer ("Mr. Schaffer") is a principal in the firm of Ashcraft & Gerel, LLP. On information and belief, he is a citizen and resident of Maryland residing at 11804 Hunting Ridge Court, Potomac, Maryland 20854.

7.    Ashcraft & Gerel, LLP is a Washington, D.C. limited liability partnership with its principal place of business at 2000 L Street, NW, Suite 400 Washington, District of Columbia 20036. It is a personal injury law firm currently comprised of approximately 40 personal injury lawyers. It has offices in Washington D.C., Maryland and Virginia. In its own words, the firm represents "injured people recover losses and damages resulting from malpractice, negligence, unsafe products and work injuries giving rise to workers' compensation claims."

8.    During much or all of the relevant time discussed below, the Ashcraft & Gerel law firm was an unincorporated association, *i.e.*, a general partnership. On information and belief, Defendant Ashcraft & Gerel, LLP is the successor in interest and/or a continuation of the unincorporated association of the same name.

9.    Martin E. Gerel is the sole surviving founding partner of Ashcraft & Gerel, which he founded with the late Lee Ashcraft in 1953. On information and belief, he is a citizen and resident of Maryland having his principal place of business at One Central Plaza, Suite 1002, 11300 Rockville Pike, Rockville, Maryland 20852.

10.    James A. Mannino is a principal in Ashcraft & Gerel. On information and belief, he was a general partner in that firm during the time prior to its conversion into an LLP. On information

and belief, he is a citizen and resident of Maryland residing at 10806 Pleasant Hill Drive, Potomac, Maryland 20854.

## JURISDICTION AND VENUE

11.  Jurisdiction is proper in this Court under 28 U.S.C.§1332.

12.  Venue is proper in this judicial district and division under 28 U.S.C. §1391.

## FACTS COMMON TO ALL COUNTS

**MR. GALLUCCI'S ACCIDENT AND INJURY
DURING AN APPRENTICESHIP AT TREASURY.**

13.  On July 9, 1972, Mr. Gallucci commenced work for the Bureau. He started in a four-year apprentice program. As an apprentice, his pay was to increase annually based on satisfactory performance. Upon completion of this four-year apprentice program, participants became journeymen and enjoyed the increased pay associated with journeyman status.

14.  On or about April 23, 1973, Mr. Gallucci was injured on the job at the Bureau in Washington, D.C. At the time, he held the position of an "apprentice plate printer." Specifically, "while lifting and changing wiping rags from the press weighing approximately 50 pounds," Mr. Gallucci "developed pain in the left hip and back, which became progressively worse."

**DEFENDANTS' REPRESENTATION OF MR. GALLUCCI.**

15.  After his injury, Mr. Gallucci retained Mr. Schaffer of Ashcraft & Gerel to represent him. Mr. Schaffer commenced to represent Mr. Gallucci on or before October 20, 1973.

16.  Represented by Mr. Schaffer, Mr. Gallucci applied in 1973 for federal worker's compensation benefits as a result of his on-the-job injury while employed for the Bureau, timely making his application to the Office of Workers' Compensation Programs ("OWCP"), a division of the Department of Labor ("Labor").

Page 4

17. At all times during Mr. Schaffer's representation of Mr. Gallucci, Mr. Gallucci's rights were controlled by the FECA, codified at 5 U.S.C. §§ 8101 *et seq.* Then, as now, the Act included a provision specifying that persons who, like Mr. Gallucci, are injured while in an apprentice position are entitled to enhanced compensation commensurate with their having timely advanced at such time as the advancement would have been achieved in the ordinary course, but for the injury.

18. Specifically, the Act entitles persons injured while in a training position to increased compensation as though they progressed past the learning position with such enhancement taking effect at the time they would have done so. In its present form, which is identical in all respects material to this case, this statute provides as follows:

§ 8113. Increase or decrease of basic compensation

(a) If an individual–

(1) was a minor or employed in a learner's capacity at the time of injury; and

(2) was not physically or mentally handicapped before the injury;

the Secretary of Labor, on review under section 8128 of this title [5 USCS § 8128] after the time the wage-earning capacity of the individual would probably have increased but for the injury, shall recompute prospectively the monetary compensation payable for disability on the basis of an assumed monthly pay corresponding to the probable increased wage-earning capacity.

5 U.S.C. §8113.

19. In 1973, Labor, through OWCP, approved Mr. Gallucci's application for worker's compensation benefits resulting from the on-the-job injury and Mr. Gallucci began receiving monthly compensation payments. Mr. Gallucci has received worker's compensation payments from 1973 to the present.

20. In the initial proceedings, OWCP calculated Mr. Gallucci's monthly compensation

payment based on the pay rate for an apprentice printer and included no provision for enhancement to the pay rate for a journeyman printer, despite clear statutory law, Labor precedent and Labor policy requiring that a federal worker injured while in an apprenticeship status receive worker's compensation payments at the pay rate of a journeyman at such time as the non-injured members of the worker's apprentice class advance to that status.

21. On or about July 9, 1973, Mr Gallucci's worker's compensation benefits should have been increased as though he had advanced to the next year of apprenticeship on that day. Mr. Schaffer did not advise Mr. Gallucci of his right to such increases nor did Mr. Schaffer request OWCP to implement them.

22. As is standard practice in injury cases, in 1975 after Mr. Gallucci had reached his maximum medical improvement from his injuries, OWCP notified Mr. Schaffer of its calculation of Mr. Gallucci's loss of wage earning capacity ("LWEC"). Represented by Mr. Schaffer, Mr. Gallucci sought a hearing on OWCP's calculation. Though the purpose of this process was to establish the baseline worker's compensation payments to be made to Mr. Gallucci thenceforth, Mr. Schaffer did not advise Mr. Gallucci of his right to increased benefits under the Act and did not request OWCP to implement a section 8133 increase.

23. On or about July 9, 1976, Mr. Gallucci's worker's compensation payments should have been increased as though he had completed his apprenticeship and advanced to journeyman status. Mr. Schaffer did not advise Mr. Gallucci of his right to such increases nor did Mr. Schaffer request OWCP to implement them.

24. On or about July 13, 1976, following the aforementioned hearing at which Mr. Schaffer represented Mr. Gallucci, OWCP affirmed its calculation of Mr. Gallucci's LWEC. On August 19,

1976, OWCP notified Mr. Schaffer that the LWEC calculation had been affirmed and was then final and appealable. Thereafter, Mr. Schaffer met with Mr. Gallucci in Ashcraft & Gerel's Washington, D.C. office. At that meeting, Mr. Gallucci asked how OWCP could have arrived at such a low figure for his benefits; in response, Mr. Schaffer told Mr. Gallucci that OWCP could do "anything they want" and advised Mr. Gallucci that any effort to fight OWCP for increased benefits would be "pointless". Again, Mr. Schaffer did not advise Mr. Gallucci about, or seek to invoke or prosecute, his rights to increased payments under section 8113 of the Act.

25. In November of 2002, Mr. Gallucci called Ashcraft & Gerel, LLP and spoke with an attorney from the firm for around forty minutes. During this conversation Mr. Gallucci detailed how he had been underpaid for over thirty years due to Mark Shaffer's failure to competently and thoroughly represent him. At the conclusion of the conversation the attorney told Mr. Gallucci "there is nothing we can do to help you."

## MR. GALLUCCI'S EFFORTS TO OBTAIN INCREASED BENEFITS AND BACK BENEFITS FROM OWCP.

26. In the Summer of 2002, Mr. Gallucci brought the apparently erroneous pay rate calculation to the attention of OWCP, and requested that the calculation be reviewed and corrected, both prospectively and retroactively, according to the Act and Labor policy.

27. On October 15, 2002, OWCP issued a preliminary finding that the pay rate used in Mr. Gallucci's case was erroneous, based on section 8113 of the Act and longstanding Labor policy. In its preliminary finding, OWCP concluded that Mr. Gallucci's compensation payments for the time period beginning on July 13, 1976 previously should have been, and prospectively should be, based on the pay rate for a journeyman printer, not an apprentice printer.

28. The preliminary finding by OWCP was provided to Mr. Gallucci and to the Bureau for

comment before becoming a final decision. The Bureau staunchly resisted paying, presumably because of the size of the sums payable as a result of OWCP's finding. Whatever the cause of the Bureau's resistance, the resulting backlash plunged Mr. Gallucci into an odessy of agency paperwork and ultimately into litigation.

29. The Bureau opposed OWCP's preliminary finding. In November of 2002, it submitted substantial factual and legal arguments to OWCP challenging the preliminary finding.

30. After reviewing the Bureau's opposition materials, in letters dated January 22, 2003 and January 30, 2003, OWCP rejected the Bureau's legal and factual arguments and affirmed its preliminary finding that the pay rate for Mr. Gallucci's compensation payments should have been enhanced based on the progression of Mr. Gallucci's apprentice class to journeyman printer status.

31. On May 21, 2003, OWCP issued a final decision that the pay rate in Mr. Gallucci's case had indeed been erroneously calculated. OWCP's decision states that the amount owed to Mr. Gallucci for the period from August 13, 1981 to September 9, 2000 due to the pay rate error was **$828,980.11**. The decision also states that the total amount due Mr. Gallucci would be paid to in eight payments. (OWCP copied the May 21, 2003 decision to Treasury. Further, on May 28, 2003, OWCP also wrote separately to Treasury to explain its reasons for rejecting the arguments Treasury had advanced up to that point.)

32. In its May 21, 2003 decision, OWCP indicated that it was making a separate calculation of the amount owed to Mr. Gallucci for the time period September 10, 2000 to June 25, 2003 and expected to have the calculation completed by the end of June 2003. On information and belief, OWCP also determined to separately calculate the amount of back-benefits owed to Mr. Gallucci due to the incorrect use of the apprentice pay rate for the period from April 23, 1973 to August 12,

Page 8

1981 because Labor's records for the earlier period of time are not yet computerized or are otherwise in such condition that a calculation of the amount is administratively difficult. (The two separate periods of time, April 23, 1973 to August 12, 1981 and September 10, 2000 to June 25, 2003, are hereinafter referred to as: "the two additional periods of time.")

33. The first payment, of those specified in the May 21, 2003 letter by OWCP, in the amount of $99,999.99, was later deposited into Mr. Gallucci's account.

34. However, by letter dated June 4, 2003, Treasury asked Labor not to make the payments specified in the May 21, 2003 decision letter. Treasury asserted that "new" information had come to light, falsely alleged that there were indications of "fraud" with respect to Mr. Gallucci's case, and requested the opportunity to further investigate the case.

35. After receiving Treasury's communication, OWCP personnel advised Mr. Gallucci not to attempt to spend any of the money from the one payment that had been made to him. OWCP did not make the remaining payments and, in effect, it *de facto* froze the one payment it did make pending review of Treasury's allegations.

36. Though procedurally and factually baseless, Treasury's allegations went to the heart of Mr. Gallucci's claim for back-benefits. By virtue of Treasury's challenge and OWCP's directive that he not spend the money it had paid him to that point, Mr. Gallucci's affairs were plunged into a state of total uncertainty such that he was not certain to receive any back-benefits at all.

37. Thereafter, Treasury sought and failed to prove that Mr. Gallucci (while represented by Mr. Schaffer) had committed some sort of fraud in connection with his initial application for benefits.

38. Beginning in June 2003, Mr. Gallucci repeatedly requested that OWCP provide him with

an explanation of the status of the payments owed to him and the calculations of the money owed for the two additional periods of time. OWCP did not provide any information regarding the matter.

39. Unable to get a response from Labor regarding the status of the payments owed to him or the calculation of the amounts owed to him for the two additional time periods, Mr. Gallucci was left with little choice: he filed suit in this Court seeking to compel Labor to act.

40. On June 17, 2005, Judge Royce Lamberth granted the defendant's motion to dismiss the plaintiff's complaint on the grounds that the court lacked subject matter jurisdiction. This outcome was devastating to William Gallucci and has made his future even more uncertain.

41. On June 28, 2004, after the filing of the *Gallucci v. Chao* case, Mr. Gallucci's counsel in that case received a copy of a decision by OWCP, dated June 25, 2004, in which OWCP again concluded, on behalf of Labor, that Mr. Gallucci was entitled to be paid at the rate of a journeyman printer, rather than at the rate of an apprentice, from 1976 (when his apprenticeship class would have reached journeyman status), to the present. The June 25, 2004 decision expressly states that Mr. Gallucci's compensation for the time period from 1976 to present would need to be recalculated, but the decision does not provide the calculation.

42. On June 29, 2004, OWCP issued a Notice of Proposed Reduction of Compensation (the "Notice"), which has the effect of substantially reducing the amount of both the payments specified in the May 21, 2003 letter for the time period from August 13, 1981 to September 9, 2000 and the payments that are owed Mr. Gallucci based on the rationale of the May 21, 2003 letter for the two additional periods of time. The Notice does so by re-evaluating Mr. Gallucci's loss of wage earning capacity ("LWEC") at two points in time, one in 1983 and one in 1992.

43. On July 16, 2004, OWCP issued a "revised" calculation, in which it concluded that he

was entitled to total back-benefits of **$661,223.96** (not the **$828,980.11** for the first period plus additional sums for the two additional periods). In other words, whereas before it had indicated Mr. Gallucci would be receiving **$828,980.11** plus additional lump sums for back-benefits associated with underpayment during the two additional periods, by its July 16, 2004 letter OWCP indicated that Mr. Gallucci was owed at most **$661,223.96** for back-benefits for all time periods. Thereafter, OWCP paid the balance due Mr. Gallucci under its revised calculation, the minimum sum conceded to be due him from the government for back-benefits.

44. In effect, by issuing the revised calculation and paying the balance not in dispute, OWCP rejected Treasury's allegations that Mr. Gallucci was not entitled to any back-benefits and lifted its directive that Mr. Gallucci not spend any of the payment OWCP had previously made to him.

**MR. GALLUCCI'S BACKGROUND AND MENTAL ILLNESS.**

45. Mr. Gallucci is a decorated Vietnam veteran. He served in Vietnam for 13 months from 1969-70. He was physically injured there during night patrol.

46. Mr. Gallucci is under myriad mental disabilities that profoundly affect his ability to function. Mr. Gallucci suffers from a range of mental illnesses including depression, Post Traumatic Stress Disorder, serious personality disorders, and difficulty with memory and concentration. *Inter alia*, he suffers from a degree of amnesia stemming from his service.

**MR. GALLUCCI'S ECONOMIC DAMAGES.**

47. As a result of Mr. Schaffer's above-described omissions, Mr. Gallucci was underpaid benefits for three decades. He has been able to wrest a back-benefits award for some of these benefits. Mr. Gallucci has incurred and continues to incur substantial professional fees seeking to obtain, defend and collect the back-benefits that Mr. Schaffer failed to seek in 1973. Because of the

large lump sum created by the three-decade delay in requesting enhanced compensation for Mr. Gallucci, the agency responsible for his benefits has hotly contested the claim -- to a point bordering on persecution.

48. Ultimately, by virtue of the above-described events that transpired in 2004, Mr. Gallucci did obtain a clear award such that he now has clear title to a specific sum of money, *i.e.*, the monies he has been paid in back-benefits. That is, the sums paid to him are now conceded by the federal government to be his.

49. An award of back interest on the back-pay is not available to Mr. Gallucci as a matter of federal law. As a result, Mr. Gallucci lost the value of the use of the benefits payments to which he was entitled for many, many years. The value of the lost back interest is estimated preliminarily to be at least $2,500,000; and, though calculating this figure with precision may require expert advice and may be an issue best determined through trial, it may be higher still.

50. As mentioned, in 2004, OWCP decreased Mr. Gallucci's back-pay award by purporting to retroactively re-evaluate Mr. Gallucci's LWEC as of two points in time, one in 1983 and one in 1992. However, OWCP did not in fact seek to decrease Mr. Gallucci's benefits in either 1983 or 1992.

51. On information and belief, the impetus for OWCP's after-the-fact LWEC "recalculations" of Mr. Gallucci's benefits was Treasury's resistance to payment of three-decades of back-benefits in a lump sum following OWCP's initial determination. As evidenced by the absence of any effort to actually conduct an LWEC adjustment in 1983 or 1992, it appears that had Mr. Schaffer acted during his representation of Mr. Gallucci to claim and procure the increased benefits to which Mr. Gallucci was entitled, Mr. Gallucci would have received additional benefits

between 1973 and 2004 equal to the entire **$828,980.11** initially calculated by OWCP as due Mr. Gallucci for the period August 13, 1981 to September 9, 2000 <u>plus</u> comparable additional sums during the two additional periods.

52. At present, it is unclear whether OWCP's reductions will stand. These reductions were challenged in *Gallucci v. Chao*, as well as the still continuing OWCP administrative process triggered by OWCP's above-discussed issuance of a formal notice to reduce benefits on June 29, 2004, before the *Chao* suit was dismissed.

53. But for Mr. Schaffer's breaches of duty Mr. Gallucci would not be facing a reduction of his benefits as of 1983 or 1992. If OWCP's Notice is upheld, then Mr. Gallucci has been damaged by the amount of the reductions and the lost value of those funds over time (*i.e.*, back interest); if OWCP's LWEC recalculations are reversed, then Mr. Gallucci will be made whole as to the actual back benefits thus reinstated, but will still have been harmed by the value of his loss of use of the money over time because back-interest is not recoverable from the OWCP process. The precise amount of these additional damages cannot be calculated until the outcome of the challenge to OWCP's recalculation of back-benefits is known.

**COUNT I**
**Professional Malpractice**
**(All Defendants)**

54. Paragraphs 1 - 53 are incorporated by reference as if fully restated herein.

55. Defendant Schaffer owed Mr. Gallucci a reasonable duty to exercise that degree of care and diligence in pursing Mr. Gallucci's injury claims compensation as used by attorneys engaged in the practice of law. This reasonable duty included advising Mr. Gallucci of his rights under the Act, including specifically his rights to enhanced compensation under section 8113 of the Act, and

Page 13

advocating these rights on Mr. Gallucci's behalf.

56. By failing to advise Mr. Gallucci of his rights under section 8113 and by failing to take action to invoke these rights on Mr. Gallucci's behalf, Defendant Schaffer breached the duty he owed Mr. Gallucci in violation of the standards reasonably to be expected of a reasonably competent practitioner in his profession, and in these circumstances, and by his acts and his omissions as alleged herein, negligently failed to render proper legal representation to Mr. Gallucci. But for Mr. Schaffer's negligence in failing to advance Mr. Gallucci's claim for higher benefits, Mr. Gallucci would have been awarded and would have collected enhanced benefits beginning in 1973. As a result of Mr. Schaffer's negligence, Plaintiff Gallucci has suffered economic loss and emotional trauma.

57. Defendants Ashcraft & Gerel, Martin Gerel and James Mannino are vicariously liable for Mr. Schaffer's malpractice under the doctrine of respondent superior. On information and belief, Mr. Gerel and Mr. Mannino are also responsible for their own negligence in failing to properly supervise Mr. Schaffer, despite knowing he was at a very early point in his career while representing Mr. Gallucci.

WHEREFORE, Plaintiff Gallucci demands judgement against Defendants for compensatory damages in the amount of Three Million Five Hundred Thousand Dollars ($3,500,000.00), or such other greater amount as proven at trial, plus interest, costs and any and all other relief to which this Court finds him entitled.

## COUNT II
### Breach of Fiduciary Duty
### (All Defendants)

58. Paragraphs 1 - 57 are incorporated by reference as if fully restated herein.

Page 14

59. Mr. Schaffer and his firm, Ashcraft & Gerel, owed Mr. Gallucci fiduciary duties, including a duty of loyalty and a duty of care.

60. Mr. Schaffer breached his duty of care by failing to inform or advise Mr. Gallucci of his rights under section 8113 of the Act. Defendant Ashcraft & Gerel also breached its fiduciary duty of care through its employee, Mr. Schaffer. Defendants Martin Gerel and James Mannino are vicariously liable for these breaches as general partners and by virtue of their above-alleged failure to properly supervise Mr. Schaffer.

WHEREFORE, Plaintiff Gallucci demands judgement against Defendants for compensatory damages in the amount of Three Million Five Hundred Thousand Dollars ($3,500,000.00), or such other greater amount as proven at trial, plus interest, costs and any and all other relief to which this Court finds him entitled.

Respectfully Submitted,

/c/ Matt Simmons
Matthew H. Simmons
Bar No. MD14700

Simmons & Associates, Chartered
7347 Wisconsin Ave. Suite 200
Bethesda, MD 20877
(301) 986-8444
Counsel for Plaintiff

Of Counsel:

Leslie McAdoo, Chartered
Bar No. 456781
1140 19th St., N.W.
Suite 602
Washington, D.C. 20036
(202) 293-0534

(202) 318-3005 (fax)

## REQUEST FOR JURY TRIAL

Plaintiff respectfully demands a trial by jury as to all issues so triable.

Matthew H. Simmons

\\Danixt\files\Client Files\Gallucci, William\Gallucci Complaint Draft 200616.wpd