# EXHIBIT G



DEPARTMENT OF THE TREASURY
BUREAU OF ENGRAVING AND PRINTING
WASHINGTON, D.C. 20228

November 26, 2002

Michael R. Huff
U.S. Department of Labor
Employment Standards Administration
Office of Workers' Compensation Programs
P.O. Box 37117
Washington D.C. 20013-7117

    Re:    Workers' Compensation Claim of William Gallucci; File No. 250029327

Dear Mr. Huff:

This letter is submitted in response to your correspondence dated October 15, 2002, regarding the above-referenced case. In this letter you requested the Bureau's legal position with regard to William Gallucci's request for additional compensation based on his status as an apprentice plate printer.

Some background information with regard to Mr. Gallucci's employment is very helpful in this instance: Mr. Gallucci was hired as an apprentice plate printer with the Bureau of Engraving and Printing ("Bureau") in July of 1972. Upon hire, Mr. Gallucci was informed that this apprenticeship was four years in length and that the acquisition and demonstration of specific knowledge, skills and abilities was paramount in order to attain journeyman status.[1] During the apprenticeship, Mr. Gallucci's performance was assessed by a journeyman plate printer every six months to determine whether or not he was successful in acquiring the requisite skills and abilities. This practice applied to every apprentice plate printer. A positive assessment from the journeyman plate printer was required in order for the apprentice to be promoted to the next year of the apprenticeship program and receive an incremental pay raise based on his/her satisfactory performance and attendance. Upon completion of the second year of the apprenticeship, the apprentice would begin hands-on experience whereby he/she was permitted to serve as the second person on a two person printing press, thus performing the function of a full time journeyman apprentice plate printer. If he/she was not successful in performing the duties of this position, he/she would be required to repeat the second year of training. The apprentice could ultimately be terminated from the program if he/she was

---

[1] The attached document describing the apprentice program for plate printers includes a General Program Outline section that details the requirements for each year of the apprenticeship program. This section indicates that the apprentice must complete training in a specific area prior to proceeding to the next level of the apprenticeship.

unsuccessful in learning and demonstrating the requisite skills and abilities. Therefore, advancement through the apprenticeship program was not automatic and Mr. Gallucci was not guaranteed to successfully complete the apprenticeship program or attain the position of a journeyman plate printer. When Mr. Gallucci was terminated from the Bureau, he had not completed his first year of the four year apprenticeship program. Moreover, during the past 27 years that Mr. Gallucci has not been working as a plate printer, many innovations and improvements in technology have altered the actual job requirements. Consequently, in order to maintain his employment with the Bureau as a plate printer, Mr. Gallucci would have had to become proficient on new equipment and knowledgeable about new technology. This equipment and technology would require progressive training. Thus, even had Mr. Gallucci completed the apprenticeship, it is mere speculation as to whether or not he would retain his job.

Within 8 months after he had been hired, Mr. Gallucci suffered a work-related injury and was unable to return to work with the Bureau. Thus, pursuant to 5 C.F.R. 315.801, Mr. Gallucci was still employed in a probationary capacity with the Bureau at the time of his injury. As a probationary employee, Mr. Gallucci's employment could have been permanently terminated with or without cause. Therefore, Mr. Gallucci was not guaranteed continued employment with the Bureau - either as an apprentice plate printer or a journeyman plate printer. This further demonstrates that Mr. Gallucci's completion of his apprenticeship and subsequent employment as a journeyman plate printer is speculative at best.

29 C.F.R. 29.5 identifies the requisite standards for an apprenticeship. It is noteworthy that subsections of this statute require the apprenticeship program to include provisions regarding a probationary period and the authority to terminate an apprenticeship agreement during the probationary period.[2] The statute's reference to the termination of an apprenticeship prior to the completion of the program recognizes that an apprentice participating in an apprenticeship program is not guaranteed completion of the program or the status of a journeyman position in the field of his/her apprenticeship. This further substantiates the Agency's contention that Mr. Gallucci was not guaranteed to complete the four year apprenticeship program and become a journeyman plate printer.

The Bureau contends that Mr. Gallucci's claim should be denied based on the doctrine of laches. In essence, laches is a "fairness" doctrine whereby relief is denied to a claimant who unreasonably and inexcusably delays in the assertion of his/her claim, causing prejudice to the adverse party. See *Deering v. United States*, 223 Ct. Cl. 342; 620 F.2d 242 (1980); see also *Ritchie v. United States*, 210 F.Supp.2d 1120 (2002); *Costello v. United States*, 365 U.S. 265 (1961); *Neighbors of Cuddy Mountain v. United States Forest Service*, 137 F.3d 1372 (9th Cir. 1998). This doctrine is based on the assumption that by neglecting or failing to assert a claim, the claimant has abandoned the right or claim. *Eldridge v. Idaho State Penitentiary*, 54 Idaho 213, 30 P.2d 781.

---

[2] Subsection (b)(8) of this statute requires that the apprenticeship program include a probationary period and (b)(19) describes the authority for termination of an apprenticeship agreement during the probationary period by either party with our without cause.

Although Mr. Gallucci ended his tenure with the Bureau on June 28, 1974, he waited 27 years after his termination from the Bureau to file a claim requesting that his worker's compensation award be amended. A prima facie showing of laches can be established by a delay of over six years from the date when the complainant knew or should have known of his/her claim. *Haworth, Inc. v. Herman Miller, Inc.*, 856 F.Supp. 354; *see also A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020 (1992). Clearly a reasonable person cannot deny that 27 years is an unreasonable and inexcusable delay. Mr. Gallucci knew or should have known that the apprenticeship program involved a four year commitment. See *Bridgeston/Firestone Research Inc. v. Automobile Club De L'ouest de la France*, 245 F.3d 1359 (ct app for fed cir 2001) ("In determining whether a party has too long 'slept on its rights' it is necessary to show that the party knew or should have known that it had a right of action, yet did not act to assert or protect its rights.") Mr. Gallucci also knew that if he successfully completed this program, he would be promoted to a journeyman plate printer position and he would be compensated accordingly. Thus, Mr. Gallucci should have filed this claim adjustment within a reasonable time after his four year apprenticeship would have expired – assuming he satisfactorily completed each level of training and was not terminated prior to the expiration of the apprenticeship. However, even with this knowledge, Mr. Gallucci failed to assert his right within a reasonable time and he has not proffered any excuse or explanation for this unreasonable delay. Mr. Gallucci should not be rewarded for sleeping on his rights for 27 years rather than actively pursuing administrative relief. In cases where suit has been brought after some lapse of time, the question is whether it would be inequitable, because of the delay, to enforce the claim. *Czaplicki v. The Hoegh Silvercloud*, 351 U.S. 525; *Holmberg v. Armbrecht*, 327 U.S. 392. In the present case, principles of equity dictate that Mr. Gallucci's claim should be denied.

Mr. Gallucci's inexcusable delay in the pursuit of his claim materially prejudices the Bureau. After 27 years, critical files have been destroyed or misplaced and the Bureau has not budgeted for this significant increase in funds. For 27 years the Bureau has based its workers' compensation budget on Mr. Gallucci's initial claim. Granting his request for a sizable amendment to his claim could create an Anti-Deficiency Act issue, because the Bureau could exceed its appropriated budget. Thus, Mr. Gallucci's unreasonable delay causes material prejudice to the Bureau. *Id.* at 1363. Due to Mr. Gallucci's lengthy delay in asserting his claim, the Bureau's burden to prove prejudice is reduced. *Deering v. United States*, 223 Ct. Cl. 342 (1980) (the longer the delay by a plaintiff, the less need there is to search for specific prejudice and the greater the shift to plaintiff of demonstrating lack of prejudice); see also *Brundage v. United States*, 205 Ct.Cl. 502, 504 F.2d 1382 (1974); *Cason v. United States*, 200 Ct.Cl. 424, 471 F.2d 1225 (1973). However, despite this reduced burden, the Bureau has specifically demonstrated how Mr. Gallucci's inaction and omission has caused material prejudice.

The Secretary of Labor has recognized that an unreasonable delay may cause prejudice to an Agency, thus justifying the dismissal of a claim. Under 5 U.S.C. §8122(c) the one-year period for filing a claim may be waived if the claim was filed within 5 years and the Office of Workers' Compensation Programs finds that (1) the claimant was not responsible for the filing delay or (2) that the claimant demonstrated sufficient cause or

reason to explain the delay and the opposing party has not suffered material prejudice.[3] The test for determining whether "sufficient cause or reason" justified a waiver is whether a claimant prosecuted his/her claim with "that degree of diligence which an ordinarily prudent person would have exercised in protecting his rights under the same or similar circumstances." *Bernard DeLorme*, 33 ECAB 1723 (1982). Precedent caselaw indicates that "sufficient cause" under 5 U.S.C. §8122 (c) contemplates situations such as a psychiatric condition, being engaged in administrative and judicial proceedings to retain a job, or being under psychiatric care and medication. *See Dollie R. Walker*, 32 ECAB 1729; *Bernard DeLorme*, 33 ECAB 1723; *Ubaldo F. Baca*, 28 ECAB 96. In the present case, Mr. Gallucci was solely responsible for the unreasonable delay in pursuing this claim and he has completely failed to proffer any logical cause or reason for the delay and none can be ascertained. The Bureau was not in any way responsible for this incredible delay. Thus, Mr. Gallucci has absolutely failed to demonstrate sufficient cause and it is clear that his extraordinary delay was not due to circumstances beyond his control. Additionally, an ordinarily prudent person would surely have pursued this claim prior to the passage of 27 years.

Pursuant to 31 U.S.C. §3702(b)(1), a claim against the government must be filed within six years after the claim accrues. Mr. Gallucci has clearly violated this statute by failing to file his claim in a timely manner.

Based on the foregoing information, the Bureau requests that the Office of Workers' Compensation Programs deny Mr. Gallucci's claim for additional compensation based on a higher compensation pay rate.

Respectfully submitted,

*Gail Serenco*

Gail Serenco
Office of Chief Counsel
Bureau of Engraving and Printing

---

[3] The existing statute was amended effective September 7, 1974 and the previous language that is referenced above was applicable to any injury occurring before this date. Mr. Gallucci was injured on April 23, 1973, thus making the previous language applicable to his case.