## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

WILLIAM T. GALLUCCI,          *
                                    *

        Plaintiff,            *
                                    *

        v.                 *    Case No.:  **1:06CV00020 (GK)**
                                    *    Judge Gladys Kessler

MARK L. SCHAFFER, *et al.*,     *
                                    *

        Defendants.        *

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
## OF DEFENDANTS' MOTION TO DISMISS FOR FAILURE
## TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

Defendants, Mark L. Schaffer, Ashcraft & Gerel, LLP, Martin E. Gerel, and James A. Mannino, ("Defendants") by and through their undersigned counsel submit this Memorandum of Points and Authorities in support of the Defendants' Motion to Dismiss plaintiff William T. Galluci's ("Plaintiff") Complaint for failure to state a claim upon which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6).

As grounds for and in support of dismissal, Defendants state as follows:

### FACTS

In 1973, the Plaintiff was working as an apprentice engraver at the Bureau of Engraving and Printing when he was injured on the job.  Complaint at ¶ 1.  At the time, the Plaintiff had completed 10 months of a 48-month-long apprenticeship, which he had to complete successfully in order to achieve the status of plate printer.  Complaint at ¶ 4.

After the Plaintiff was injured, he retained the Defendant law firm to represent

him in his claims against the government for benefits under the Federal Employees'
Compensation Act.  The representation lasted from on or about October of 1973 until
approximately August of 1976, almost twenty-nine years prior to the filing of the present
lawsuit.  Complaint at ¶ 2.  The Plaintiff applied for, and was granted, federal worker's
compensation benefits as a result of his work injury.  Complaint at ¶ 16.  Under the
Federal Employees' Compensation Act, employees who are injured while working in a
"learner's capacity" and whose wages "would probably have increased but for the injury"
are entitled to compensation at the rate corresponding to the probable-increased wage-
earning capacity.  Complaint at ¶ 18.  The Plaintiff alleges that Defendant Schaffer did
not advise the Plaintiff of his potential rights to such increased compensation, and did
not seek such increased compensation on the Plaintiff's behalf.  Complaint at ¶ 22.
Plaintiff also alleges that the Defendants failed to exercise the degree of care and
diligence used by attorneys in the practice of law in not advising the Plaintiff of the
potential for increased compensation and not seeking such increased compensation
during the period of representation, 1973 to 1976.  Complaint at ¶ 55.

## STANDARD OF REVIEW

Dismissal under Fed. R. Civ. P. 12(b)(6) requires the Court to take the
allegations of the Complaint as true and liberally construe them in favor of the plaintiff.
See Major v. Plumbers Local Union No. 5, 370 F. Supp. 2d 118, 123 (D.D.C. 2005)
(citation omitted).  However, conclusory factual and legal allegations need not be
considered by the Court.  Id.  A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)
will be granted only if it appears beyond doubt that the plaintiff cannot prove any set of
facts in support of his claims which would entitle him to relief.  Id.  In this case, even

with the well-pleaded facts taken as true and liberally construed, the Plaintiff's

Complaint fails to state a claim upon which relief may be granted and the claims are

barred as a matter of law by the applicable statute of limitations, by the doctrine of

laches, and by the lack of injury to the Plaintiff.

**ARGUMENT**

**I.     Plaintiff's Lawsuit is Barred by the Applicable Statute of Limitations**

The Plaintiff is barred as a matter of law from bringing this lawsuit under

the statute of limitations.  In the District of Columbia, an action for legal malpractice

must be filed within three years from the time the right to maintain the action accrues.

See D.C. Code Ann. § 12-301(8); Jung v. Mundy, Holt & Mance, P.C., 372 F.3d 429,

432 (D.C. Cir. 2004).

In legal malpractice cases, the statute of limitations can be extended by the

"discovery rule."   The "discovery rule" provides that "a claim does not accrue until a

plaintiff knows, or by the exercise of reasonable diligence should know, of (1) an injury,

(2) its causes, and (3) some evidence of wrongdoing." Wagner v. Sellinger, 847 A.2d

1151, 1154 (D.C. 2004).  Stated differently, the statute of limitations "will not begin to

run until the plaintiff either has actual notice of the cause of action... or has 'inquiry

notice' as of the time a reasonable investigation would have led to actual notice."

Diamond v. Davis, 680 A.2d 364, 372 (D.C. 1996).  Not all damages need be sustained,

"or even identified, for the cause of action to accrue; any appreciable and actual harm

flowing from the defendant's conduct is sufficient."  Ideal Electronic Security Co., Inc. v.

Brown, 817 A.2d 806, 809 (D.C. 2003).  Additionally, the District of Columbia has

-3-

adopted the "continuous representation rule," which provides that when a client may have been injured during the period in which the client's attorney was retained, the cause of action does not accrue until the attorney's representation is terminated. <u>See</u> <u>R.D.H. Communs. v. Winston</u>, 700 A.2d 766, 768 (D.C. 1997) (adopting the continuous representation rule).

In this case, the Plaintiff has exceeded the statute of limitations for his claim, and as a matter of law is barred from bringing the current lawsuit. The alleged wrong giving rise to this lawsuit occurred during the period in which the Defendants represented the Plaintiff, or from on or about October 20, 1973 until approximately August 19, 1976. Plaintiff does not allege in his Complaint that he was represented by the Defendants any later than August of 1976.[1] <u>See</u> Complaint at ¶ 2. The present claim was, by agreement, deemed filed on April 27, 2005, 28.6 years after representation had terminated.[2] As such, the continuous representation rule is inapplicable, and has no effect on the applicable statute of limitations.

Even if the Court should apply the discovery rule to the case at hand, the Plaintiff would be barred by the statute of limitations. On numerous occasions in the past, the Plaintiff demonstrated that he either knew, or should have known, of his

_____

[1] Plaintiff notes in his Complaint that he allegedly contacted the Defendant law firm in November of 2002 and spoke with an unidentified associate for approximately forty minutes, discussing how he "had been underpaid for over thirty years due to Mark Schaffer's failure to competently and thoroughly represent him." Complaint at ¶ 25. Even though there is no way to confirm that this conversation ever occurred, such a conversation does not demonstrate a continuance of representation.

[2] By virtue of a tolling agreement between the parties, this lawsuit is deemed to have been filed on the date of that agreement, April 27, 2005.

alleged injury, its alleged causes, and the alleged wrongdoing by the Defendants.  On

August 20, 1985, the Plaintiff wrote a letter to Kathryn Holbrook at the Department of

Labor in which he raised the issue of a discrepancy between his current wages and the

wages being paid in the Bureau of Engraving and Printing.  See Letter of August 20,

1985, at 1 [unnumbered] (attached as Exhibit A).  To the extent that the Plaintiff was

concerned about his rate of compensation at that time, he should have exercised

reasonable diligence and discovered his alleged injury, its causes, and identified an

alleged wrongdoing by the Defendants.  Plaintiff later wrote a letter to a Mr. Cain at the

Office of Workers' Compensation Programs on February 10, 1989 in which he stated

that he was "...seeking retroactive compensation benefits from February 21, 1975 until

July 1, 1983."  He also refers to having contacted "numerous attorneys," which, taken

as true, suggests that he had advisors to provide counsel as to his claimed injury and

its source.  See Letter of February 10, 1989, at 1 [unnumbered] (attached Exhibit B).

Further, Mark Cobey, an attorney retained by the Plaintiff, wrote a letter to the U.S.

Department of Labor on January 16, 1997, reflecting his representation of the Plaintiff,

and requesting all files with regard to "his claim for worker's compensation benefits."

See Letter of January 16, 1997 (attached as Exhibit C).  Counsel with access to these

files, and acting as agent for Mr. Gallucci, should have given his client information as to

his alleged injury and its cause. Finally, on May 15, 2001, Thomas P. Fochs sent a

letter to the Office of Workers' Compensation Programs in which he represented that

he was an attorney for the Plaintiff, and explicitly raised the issue of an increased rate

of compensation under 5 U.S.C. § 8113(a).[3]  See Letter of May 15, 2001, at 6, 33-36 (attached as Exhibit D).  Thus, as an agent of Mr. Gallucci, attorney Fochs actually raised the deficient compensation claim in 2001, four (4) years before suit was filed.

Defendant submits that each of these letters reflect an instance where the Plaintiff manifested his knowledge (directly or through his agent) of at least an alleged injury and its alleged cause.  Most importantly, Plaintiff was represented by at least two (2) attorneys throughout the past 28.6-year period, one of whom actually asserted an error in the worker's compensation wage calculations, the very issue Plaintiff seeks to raise in this stale lawsuit.  Accordingly, Mr. Gallucci was on inquiry notice of his purported claims well outside the three-year limitations period and certainly no later than May 15, 2001.  Therefore, the three-year limitation period expired long before the effective date of the Complaint (April 27, 2005).

Thus, the Plaintiff is barred, as a matter of law, from bringing the current lawsuit. The statute of limitations accrued and expired well before the Plaintiff brought his claims.  Mr. Gallucci failed to diligently take advantage of retained attorneys to pursue the alleged injury, as well as the alleged wrongdoing and cause.  Since the Complaint was filed at least one year outside of the three (3) year limitations period, this lawsuit should be dismissed, with prejudice.

---

[3] The information regarding Mr. Gallucci's claim under 5 U.S.C. § 8113(a) likely had been in attorney Fochs's hands weeks before the date of the letter, as he obviously had time to review and analyze the applicable facts in Mr. Gallucci's case prior to transmitting the letter to the Office of Workers' Compensation Programs.  As such, the Plaintiff and his attorney were well aware of the issue even before the date of the letter.

## II.    Alternatively, Plaintiff's Lawsuit Is Barred by the Doctrine of Laches

In light of the fact that the representation at issue in this case occurred 28.6 years before the present suit was filed, the doctrine of laches should apply to bar this lawsuit.  In the District of Columbia, the elements of laches are (1) undue delay, (2) unexplained delay, and (3) prejudice to the other party.  Simpson v. D.C. Office of Human Rights, 597 A.2d 392, 403-04 (D.C. 1991); Interdonato v. Interdonato, 521 A.2d 1124, 1137 (D.C. 1987).

Two types of prejudice can support a laches defense: first, the delay may have resulted in a loss of evidence or witnesses supporting the defendant's position; and second, the defendant may have changed his position due to the plaintiff's delay.  Interdonato, 521 A.2d at 1138.  Prejudice to the defendant "is the primary consideration.  Nevertheless, if the delay is lengthy, a lesser showing of prejudice is required.  When the delay is measured in years rather than in months, reliance interests grow, memories dim, evidence is lost, and prejudice may be inferred more readily."  Fed. Mktg. Co. v. Va. Impression Prods. Co., 823 A.2d 513, 525-6 (D.C. 2003); see also, County of Oneida v. Oneida Indian Nation, 470 U.S. 226, 266 (1985) (stating that while the mere passage of time does not support a finding of laches per se, "in cases of gross laches the passage of a great length of time creates a nearly insurmountable burden on the plaintiffs to disprove the obvious defense of laches" (citing to delays of 46, 38, and 30 years as examples of such great lengths of time)).  "Just determinations of fact cannot be made where, because of the passage of time, the memories of witnesses have faded or evidence is lost."  Wilson v. Garcia, 471 U.S. 261, 271 (1985); accord, Grand Canyon Trust v. Tucson Elec. Power Co., 382 F.3d 1016, 1023 (9th Cir.

2004) (stating that "evidentiary prejudice includes such things as lost, stale, or degraded evidence, or witnesses whose memories have faded or who have died."); Hutchinson v. Spanierman, 190 F.3d 815, 826 (7th Cir. 1999) (same); Wanlass v. G.E., 148 F.3d 1334, 1337 (Fed. Cir. 1998) (noting that laches prejudice can exist due to "unreliability of memories of long past events").

Furthermore, "laches stems from the principle that 'equity aids the vigilant, not those who slumber on their rights,' and is designed to prevent enforcement of stale claims." In re Estate of Derricotte, 885 A.2d 320, 325-26 (D.C. 2005) (internal citation omitted). A successful defense of laches hinges on a showing that "the party to whom laches is imputed has knowledge of his rights, and an ample opportunity to establish them in the proper forum; and by reason of his delay the adverse party has good reason to believe the alleged rights are worthless, or have been abandoned." American Univ. Park Citizens Assoc. v. Burka, 400 A.2d 737, 742 (D.C. 1979).

In the present case, the relevant legal representation was provided 28.6 years before the Plaintiff filed his Complaint. By the same logic which demonstrates that the Plaintiff was aware of his claim for statute of limitation purposes, the Plaintiff has had numerous opportunities in which to bring suit based on his current theory of recovery. By his own account, Plaintiff retained a number of attorneys in the past 28.6 years, and had knowledge of the facts underlying his present Complaint many years ago. In addition, any memories of the Defendants of the representation at issue, or the supervision of the representation at issue, have necessarily dimmed. After 28.6 years, the Defendants are prejudiced in that they cannot, with any degree of certainty, recall the specific circumstances of the representation, or of their particular actions with

respect to the representation.  See Warren v. U.S., 4 Cl. Ct. 552, 557 (Fed. Cl. 1984) (finding laches where "[t]he government would be forced to identify relevant documents still in existence and secure witnesses who could be expected to have an imperfect memory of events occurring over thirty years ago.  The combination of this specific prejudice plus the long delay in filing suit [32 years] is enough to invoke laches here.").

Furthermore, any recollection by the Plaintiff of the specifics of the representation by the Defendant surely has diminished as well.  Mr. Gallucci states in his Complaint that he suffers "difficulty with memory and concentration" and "a degree of amnesia stemming from his service."  Complaint at ¶ 46.  Indeed, the Plaintiff is unable to identify the attorney at the Defendant law firm with whom the Plaintiff claims to have had a 40-minute-long discussion in November of 2002.  If the Plaintiff's memories from 2002 are not fully intact, it strains credulity to suggest that his memories, or the memories of the Defendants, are intact and reliable after 28.6 years.

Nowhere in the Complaint does the Plaintiff explain why he has waited for so long to bring suit against the Defendants.  Therefore, his delay is both undue and unexplained.  The Plaintiff has had 28.6 years to bring his lawsuit, but failed to do so even after he began to question the relief the Defendant had obtained for him.

Given all of these circumstances, even if this matter is not barred by the statute of limitations, in light of the extremely lengthy, unexplained, and unreasonable delay in bringing this lawsuit, and the prejudice to the Defendants which naturally accompanies a delay of more than a quarter-century, the doctrine of laches should apply to terminate this case.

### III.    Plaintiff is Not Entitled to the Pay Increases under 5 U.S.C. § 8113

Beyond the bar of the applicable statute of limitations and the doctrine of laches, Plaintiff's Complaint fails to state grounds upon which relief may be granted as he was never entitled to pay increases under 5 U.S.C. § 8113(a) as a matter of law and, therefore, he has suffered no injury as a result of any act or omission of the Defendants.[4]

#### A.    Plaintiff Must Demonstrate He Was Employed in a "Learner's Capacity"

5 U.S.C. § 8113 provides in relevant part:

> (a) If an individual: (1) was a minor or employed in a learner's capacity at the time of injury; and (2) was not physically or mentally handicapped before the injury; the Secretary of Labor, on review under section 8128 of this title after the time the wage-earning capacity of the individual would probably have increased but for the injury, shall recompute prospectively the monetary compensation payable for disability on the basis of an assumed monthly pay corresponding to the probable increased wage-earning capacity.

Thus, the core of Plaintiff's claim is that he was "employed in a learner's capacity" at the time he was injured, and "but for" the injury his wage-earning capacity "would probably have increased." The Employees Compensation Appeals Board has consistently set forth the circumstances under which an employee will be considered to be employed in a learner's capacity at the time of his or her injury:

> These [factors] include whether the job classification described an "in-training" or learning position, whether the position was one in which the employee could have remained for the rest of his or her life and whether any advancement would have been contingent upon ability, past experience or other qualifications.

Ross v. DOJ, 2004 ECAB LEXIS 1316, * 13-14 (2004); Allan v. USPS, 1979 ECAB

---

[4] This deficiency is fatal to Plaintiff's case since proof of a causally related loss is an essential element of any legal malpractice case.  See Chase v. Gilbert, 499 A.2d 1203, 1212 (D.C. 1985).

LEXIS 110, * 8 (1979), citing James L. Parkes, 13 ECAB 515 (1962).

**B.    Even if Plaintiff Was Employed in a Learner's Capacity, He Cannot Demonstrate a Probability of Advancement to the Next Compensation Level**

Even where an employee is found to have been employed in a learner's capacity under 5 U.S.C. § 8113(a), the employee must also establish that he would have progressed to the next compensation level.  For example, in Alexander v. Dept. of the Navy, 2005 ECAB LEXIS 642 (2005), the Board found that an employee who had been injured while working as an apprentice shipfitter was employed in a learner's capacity, but that the record did not establish that, but for the injury, the employee would have progressed to the next level.  "[A]ny promotion to the next step level within the apprenticeship program... would have been based on merit with regard to the appraisal system in place..." Id. at * 14.  In that case, the employee was on probation and had not progressed at the proper rate.  As such, even though the employee was employed in a learner's capacity, the Board found that he was not entitled to wage-loss compensation at the next compensation level.  Id.

Mr. Gallucci was appointed to a four-year apprenticeship position on July 9, 1972.  See Notice of June 10, 1974 (attached as Exhibit E).  His apprenticeship was subject to a 1-year probationary period, during which period he was injured (on April 24, 1973).  Id.  The position description for the plate printer position makes clear that only upon *successful* completion of the apprenticeship program would the Plaintiff have had the ability to earn the promotion.  See Job Description (attached as Exhibit F).  The Plaintiff was required to earn a satisfactory review every six months of the

apprenticeship, for a total of eight performance reviews over the four-year period.  See Letter of November 26, 2002 (attached as Exhibit G).  A promotion to a journeyman position is never an automatic promotion, but is rather more analogous to the potential for a merit-based promotion, as the Plaintiff could only have been elevated to the next level had he demonstrated sufficient knowledge, skills and abilities to successfully pass each review and complete the training program.  See Job Description (attached as Exhibit F).  Thus, it cannot be said that Plaintiff's wages would "probably have increased but for the injury."  Rather, any increase would have been subject to Mr. Gallucci's actual performance.

Furthermore, while Plaintiff may have satisfactorily completed the first six months, or one-eighth of the program, he still had approximately 38 months in which to gain and demonstrate his mastery of the required skills and knowledge, with seven separate performance evaluations remaining.  Defendants submit that assuming that the Plaintiff would successfully complete the program after only participating for a fraction of the required time would be impermissibly speculative.  The Board reviewed a similar set of facts in Ross.  In Ross, the employee was injured while employed as a special agent trainee with the Federal Bureau of Investigation.  Had she been able to complete her training and become a special agent, she would have remained at her current level for a two year probationary period, with any subsequent promotions being based on merit.  The Board held that she was thus not a learner under the terms of 5 U.S.C. § 8113(a), as any promotion was not automatically given.  Ross at * 14.  As is the case here, any promotion would not have been automatic.  Plaintiff had not even completed the first year of a four year program, and had only been reviewed based on

his performance in the first six months of a 48-month-long program.  Plaintiff may not have to demonstrate that he was guaranteed to successfully complete the program, but he must demonstrate that such a result was, at the very least, probable.  This, he cannot show.

For example, Mr. Gallucci had already suffered a serious back injury while serving in the U.S. Army in Vietnam.  See Complaint at ¶ 45.  The job description for the plate printer position describes the physical effort required as including the lifting of up to 75 pounds.  See Job Description (attached as Exhibit F).  Mr. Gallucci's pre-existing injury raises a substantial question as to whether he was ever physically capable of performing the physical work required to complete the program.  Mr. Gallucci also admits that he suffers from a number of disabilities, "including depression, Post Traumatic Stress Disorder, serious personality disorders, and difficulty with memory and concentration."  Complaint at ¶ 46.  Again, these are serious disabilities that would have made it extremely difficult for Mr. Gallucci to successfully complete the program.  In light of these circumstances, it would be mere– and entirely impermissible– speculation that the Plaintiff would "probably" have completed the remaining 38 months, and successfully passed the seven remaining reviews, of the four year program based upon nothing more than the Plaintiff's first six-month review.  Moreover, it strains belief that the Plaintiff could hope to now establish that he would have probably been promoted, as the necessary witnesses would have been his supervisors from 1973 through 1976.  To the extent these individuals could even be located and are still alive, their memories of the Plaintiff's performance have surely dimmed over the past 28.6 years.

-13-

**C.**     **The Department of Labor's Determination as to the Plaintiff's Eligibility Cannot Bind the Defendants, and is Deficient as it Fails to Address the Issue of Probability of Advancement to the Next Level.**

Defendants further submit that the alleged determination made by the U.S. Department of Labor that the Plaintiff qualified under 5 U.S.C. § 8113(a) cannot bind the Defendants.  See Letter of May 28, 2003 (attached as Exhibit H).  At no point after the termination of Plaintiff's representation by the Defendants were the Defendants' party to the Plaintiff's proceedings before the Department of Labor.

Further, the Department of Labor's determination on the issue is seriously flawed as it does not address the issue of the probability that the Plaintiff would advance to the next level, as set forth in the statute.  For example, the decisions cited by the Department of Labor do not substantively discuss the issue.  In Robert H. Merritt, 11 ECAB 64 (1959), the issue was whether the claimant in that case could seek more than one increase in pay under § 8113(a).  Id. at 66.  The Board held that § 8113(a) contemplates only one increase in wage-earning capacity.  Id. at 66-67.  In Merritt, the eligibility of the claimant had already been established, and the claimant's eligibility was not discussed in the case.  In Bruce E. Hickey, 19 ECAB 98 (1967), the claimant had similarly been found eligible for increased payments under § 8113(a), but was appealing as to the specific rate to which he was entitled.  The main issue of the case was whether the claimant could have completed training by a certain date.  Id. at 99.  The claimant argued that he would have completed training after that date, and thus been compensated at a higher rate.  Id.  The Board remanded the case for an opinion from the employing establishment as to the date the claimant would have probably

completed training.  Id.  In <u>Mary K. Rietz</u>, 1998 ECAB LEXIS 220 (1998), the issue was

whether the claimant in the case was entitled to multiple wage increases under 5 U.S.C.

§ 8113(a), or just one.  The claimant argued that she would have moved up multiple

steps, in light of her skill and aptitude, but the court found that she was only entitled to

one increase.  Id. at 4.  The discussion in <u>Reitz</u> as to whether she was entitled to the

benefits is limited to one sentence, stating that the Office of Workers' Compensation

Programs found her eligible "based on the assumption that she would have finished her

trainee program had she not been injured."  Id.  In the case at hand, no such

assumption is warranted.  Similarly, in <u>John Olejarski</u>, 1988 ECAB LEXIS 95 (1988), the

claimant requested multiple increases under 5 U.S.C. § 8113(a), and submitted detailed

information demonstrating his "level of welding expertise and listing his welding

certificates."  Id. at 2.  In that case, the claimant's request was denied, as his wages at

the time were higher than those that could have been awarded.

  None of these cases relied upon in the Department of Labor's letter regarding

Mr. Gallucci contain any discussion of the respective claimants' eligibility, only the level

of pay that the claimants would receive after being found to be entitled to wage

increases under section 8113(a).  Further, the cases are only cited to as evidence that

a claimant such as the Plaintiff need not demonstrate that he or she was guaranteed to

finish the program, only that such a result was probable.  See Letter of May 28, 2003

(attached as Exhibit H).  The Defendants do not take the position that Plaintiff is

required to prove that he was guaranteed to successfully finish the program; rather, the

Defendants submit that Plaintiff must demonstrate that such a result was *probable*, as

per the statute, and that in light of the circumstances in this case, it cannot be said that

such a result was, in fact, probable.  As such, any determination of the Department of Labor as to Plaintiff's alleged entitlements cannot be binding upon the Defendants, and this Court should make the legal determination, *de novo*.

Defendants submit that Plaintiff was not and is not entitled to the stepped-up wages under § 8113(a), and as such no damages exist.  Even if the Court were to determine that the position of apprentice is an "in-training" or learning position, and that the Plaintiff could not have remained in the position for an indefinite period of time, the issue remains that the Plaintiff would not be automatically promoted, as promotion to the plate printer position would necessarily have been made on merit.  The Plaintiff had only completed ten months of a 48-month-long apprentice program, and would have had to repeatedly demonstrate his aptitude and merit had he remained in the program. Plaintiff cannot demonstrate that he "probably" would have been successful in completing the remaining 38 months and seven performance reviews, and as such was not in 1976, and is not currently, entitled to increased wages under 5 U.S.C. § 8113(a). As such, the Plaintiff suffered no injury in that regard, and has failed to state a claim upon which relief may be granted.  See Chase v. Gilbert, supra, 499 A.2d at 1212 (holding that a legal malpractice claimant must establish that the attorney's alleged negligence caused injury); accord,  Herbin v. Hoeffel, 806 A.2d 186, 196 (D.C. 2002).

\*          \*          \*          \*          \*

## CONCLUSION

None of the Plaintiff's claims against the Defendants state any claim upon which relief may be granted and are barred pursuant to the applicable three-year statute of limitations, and by the doctrine of laches in light of the Plaintiff's unexplained delay in bringing the present action.  For all the foregoing reasons, Defendants respectfully request that their Motion be granted, in its entirety, and that all of the Plaintiff's claims be dismissed, with prejudice, pursuant to Fed. R. Civ. P. 12(b)(6).


Respectfully submitted,

JORDAN COYNE & SAVITS, L.L.P.


By     _____
David P. Durbin # 928655
1100 Connecticut Avenue N.W., Suite 600
Washington, D.C. 20036
Tel: (202) 296-4747
Fax: (202) 496-2800
Counsel for Defendants

-17-