## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WILLIAM T. GALLUCCI ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No: 1:06cv00020 (GK) |
| ) | |
| MARK L. SCHAAFER, et al. ) | |
| ) | |
| Defendants. ) | |

### MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

Plaintiff, William T. Gallucci, by and through his undersigned counsel Matthew H. Simmons and Simmons & Associates, Chartered submits this Memorandum of Points and Authorities in Support of the Plaintiff's Opposition to Defendants' Motion to Dismiss for Failure to State a Claim Upon Which Relief May be Granted.

### FACTS

This Complaint arises out of Defendants' representation of William T. Gallucci in connection with injuries recieved by Mr. Gallucci while working at the United States Bureau of Engraving (the "Bureau"). Defendants' motion to dismiss goes far beyond the Complaint and they improperly attach exhibits to their motion. These exhibits cannot be considered without rendering the motion one for summary judgment under Rule 56.[1]

Mr. Gallucci is a decorated Vietnam conflict veteran. *See* Verified Complaint (hereinafter "Complaint") at ¶ 45. While serving a 13 month tour of duty in Vietnam he was injured while on

---

[1] In the event the Court determines to convert the instant motion to one for summary judgment, Mr. Gallucci respectfully requests that the Court so notify him and provide him the opportunity to respond to the motion as one for summary judgment.

night patrol.[2] *Id.* Upon returning to the United States, Mr. Gallucci obtained a job at the Bureau as an apprentice plate printer and commenced work on July 9, 1972.[3] *See* Complaint at ¶¶ 13, 14. The apprentice plate printer program is a four year program whereby a participant will become a journeyman plate printer after completing the program. *See* Complaint at ¶ 13. As an apprentice, Mr. Gallucci's pay was to increase annually based on satisfactory performance and would further increase upon completing the apprenticeship program and becoming a journeyman. *See* Complaint at ¶ 17. On April 23, 1973, Mr. Gallucci injured his hip and back while completing his apprentice plate printer program.[4] *See* Complaint at ¶ 14.

On approximately October 20, 1973, Mr. Gallucci retained Mr. Schaffer of Ashcraft and Gerel to represent him in prosecuting his claim for workers compensation benefits as a result of his on-the-job injury while employed for the Bureau. *See* Complaint at ¶ 15. At all times during Mr. Schaffer's representation of Mr. Gallucci, Mr. Gallucci's rights were controlled by the Federal Employees Compensation Act (hereinafter "FECA"), codified at 5 U.S.C. §§ 8101 *et seq*.[5] The act entitles persons injured while in a training position to increased compensation as though they

---

[2] On page 13 of Defendants' Memorandum in Support of the Motion to Dismiss, (hereinafter "Memorandum") the Defendants' misquote the Complaint by erroneously claiming ¶ 15 of the Complaint states Mr. Gallucci suffered a back injury while serving in Vietnam. *See* Motion to Dismiss p. 13.

[3] The United States Bureau of Engraving is a part of the United States Treasury Department.

[4] Mr. Gallucci injured his hip and back while he was lifting and changing wiping rags from the printing press weighing approximately 50 pounds each.

[5] 5 U.S.C. §§ 8101 *et seq* today is largely the same as it was in 1973 in that it still provides for persons injured while in a apprentice position to enhanced compensation as if they would have completed their program. For all purposes relevant to this case, the statutory provisions are the same. *See* 5 U.S.C. §§ 8113.

progressed past the learning position with such pay increase taking effect at the time they would have done so. *See* 5 U.S.C. §§ 8113. Mr. Schaffer failed to competently represent Mr. Gallucci and obtain the benefits due to him under 5 U.S.C. §§ 8113.

As a result of Defendants' negligence, Mr. Gallucci was underpaid for approximately 28 years. One of the exhibits Defendants have attached improperly to their motion appears to be a letter dated May 15, 2001 from one Thomas Fochs, acting as Mr. Gallucci's representative, in which Mr. Fochs requested a review of Mr. Gallucci's benefit calculations under 5 U.S.C. § 8128(a).[6] *See* **Defs. Mem. at Exhibit D.**[7] Assuming *arguendo* consideration of the letter is appropriate on this motion, which it plainly is not, before this date Plaintiff did not know, nor could he be expected to have known, of even the potential for the erroneous pay calculation under 5 U.S.C. §§ 8113. Further, as Mr. Fochs' letter itself reveals, neither Mr. Fochs nor Mr. Gallucci were at all certain what Mr. Gallucci's rights were at that point: the letter is framed as an inquiry of the agency in question for clarification as to whether this section applies and what its effects might be, rather than

---

[6]For reasons outside the Complaint, Mr. Fochs ceased to represent Mr. Gallucci not long after this Request was made. Later, Mr. Gallucci employed the services of Washington, D.C. attorney Leslie McAdoo who represented Plaintiff during the administrative process from the summer of 2002 through the filing of a lawsuit against the Department of Labor on June 28, 2004. This lawsuit was dismissed on June 7, 2005. At the administrative level, however, Ms. McAdoo recovered hundreds of thousands of dollars in back-benefits for Mr. Gallucci under section 8113.

[7]As other evidence that can be adduced in the event the instant motion is converted to summary judgment will show, Mr. Fochs was a non-lawyer representative rather than Mr. Gallucci's lawyer – because he was not barred where he was practicing, Fochs limited his "practice" to specific areas that did not require him to be licensed as an attorney. During the relevant time frame, Mr. Fochs therefore represented Mr. Gallucci only with respect to discrete areas rather than as a generally licensed attorney.

as a demand for payment.[8]

In November 2002, Mr. Gallucci sought advice from the law firm that represented him in 1973. He contacted Ashcraft & Gerel LLP to see what his rights were, to ascertain whether he could get compensation in the form of back benefits and increased benefits and what could be done to this end. *See* Complaint at ¶ 25. During this telephone conversation, Mr. Gallucci inquired whether he had been underpaid for over thirty years due to Mark Schaffer's failure to competently represent him. *Id.* After speaking with an Ashcraft & Gerel, LLP attorney for nearly forty minutes, Ashcraft & Gerel told Mr. Gallucci that nothing could be done at all to get him back-benefits, saying "there is nothing we can do to help you."[9] *Id.* This was in fact incorrect legal advice and quite arguably

---

[8] On page 5 of the Memorandum Defendants state that on August 20, 1985, Plaintiff wrote a letter to Kathryn Holbrook at the DOL raising the issue of wage discrepancy, however a review of the letter reveals Plaintiff was inquiring into a benefit cut and obtaining what appears to be some sort of cost of living increase. Nowhere in this letter does Mr. Gallucci come close to seeking a recomputation of benefits under 5 U.S.C. §§ 8113.

Defendants also argue that an attorney named Mark Cobey may have briefly represented Plaintiff and that this person supposedly requested Mr. Gallucci's complete file from DOL. However, there is no evidence that Mr. Cobey actually received the file, or any part thereof. This single indefinite letter cannot possibly form the basis to impute to Mr. Gallucci any knowledge of Defendants' negligence or his injury from the deprivation of the increased benefits to which he was entitled under 5 U.S.C. §§ 8113.

Lastly, Defendants' point to a letter Mr. Gallucci wrote to Mr. Cain of the OWCP dated February 10, 1989 in which they allege he wrote he was seeking retroactive benefits and had spoken to numerous attorneys. A review of this letter reveals Defendant has misquoted the letter and taken parts out of context. In actuality, Mr. Gallucci was complaining that he had spoken to many attorneys but none would take his case and he was seeking retroactive compensation he thought was due to him because of a wage earning capacity decrease finding. This has nothing to do with recomputation of benefits under 5 U.S.C. §§ 8113.

[9] Defendants rather boldly assert in their memorandum that this fact cannot be verified. However, this claim ignores the <u>verified complaint</u>. Moreover, Ashcraft & Gerel LLP notably did not attach its telephone records from this time period, which potentially could confirm that the conversation occurred. In any event, Mr. Gallucci's sworn statement as to what occurred and when is more than sufficient for purposes not only of a motion to dismiss, but even for a Rule 56 motion – though Defendants did not file such a motion.

constitutes concealment by the firm of its malpractice.[10]

In the summer of 2002, Mr. Gallucci brought the erroneous pay rate calculation to the attention of OWCP, and requested that the calculation be reviewed and corrected. *See* Complaint at ¶ 26. On October 15, 2002, OWCP issued a preliminary finding that the pay rate used in Mr. Gallucci's case was erroneous, based on 5 U.S.C. §§ 8113 and longstanding labor policy and should be based on the pay rate for a journeyman printer, not an apprentice printer. *See* Complaint at ¶ 27. Thereafter, the Bureau has staunchly resisted paying Mr. Gallucci the full back benefits he should have received; and, it filed numerous appeals from November 2002 to June 2003. *See* Complaint at ¶ 28. On May 21, 2003, OWCP issued a final decision that Mr. Gallucci is owed $828,980.11 in back benefits from August 13, 1981 to September 9, 2000 and that separate calculations would have to be made for the amounts owed to Mr. Gallucci for the time periods from September 10, 2000 to June 25, 2003 and April 23, 1973 to August 12, 1981.[11] *See* Complaint ¶31. After repeated requests for payment and for the calculations for the two time periods, on June 28, 2004, Mr. Gallucci filed suit in this Court to force to OWCP to uphold its finding, to obtain full calculations of what he was owed and to procure the funds OWCP had already determined that he was owed. *See* Complaint *Gallucci v. Chao,* C.A. 1:04cv01064, filed in this Court on June 28, 2004.

On June 25, 2004 OWCP issued another opinion concluding again that Mr. Gallucci was entitled to be paid at the rate of a journeyman printer, rather than at the rate of an apprentice printer,

---

[10]In this regard, the case of *Goldman v. Bequai* is on point. 19 F.3d 666 (D.C. Cir. 1994)(statute of limitations is tolled by any conduct that might tend to lull the claimant; mental capacity is also pertinent to factual inquiry). *See also Ray v. Queen*, 747 A.2d 1137 (D.C. 2000).

[11] Mr. Gallucci was to be paid in eight incremental payments the first totaling $99,999.99 was delivered to him but later he was told he could not spend the money while OWCP investigated allegation of fraud leveled ag

from 1976 to present. *See* Complaint at ¶ 41. June 29, 2004 OWCP issued a Notice of Proposed Reduction of Compensation and on July 16, 2004 issued a revised calculation in which it concluded that Mr. Gallucci would be entitled to total back benefits of $661,223.96 (rather than $828,980.11 plus the sums for the additional periods). *See* Complaint ¶ 43.

Rather than sleep on his rights as Defendants' contend, Mr. Gallucci sought redress for the erroneous compensation rate pursuant to 5 U.S.C. §§ 8113 through the proper administrative process from the summer of 2002 to June 29, 2004. While he potentially had claims for millions in back benefits, whether or not he was able to obtain them and how much remained uncertain until the end of the ageny process, at the earliest. Only after his benefits were adjusted downward for the last time, could Mr. Gallucci have known or realized the full extent of his injury; only then was this suit even proper.

## STANDARD OF REVIEW

The Court's function in ruling on a Motion to Dismiss for Failure to State a Claim is not to weigh potential evidence that might present at trial, but to assess whether the Complaint alone is legally sufficient to state a claim for which relief may be granted, and in making this determination, the court may not look to other pleadings or documents to resolve factual disputes. *Swoboda v. Dubach* 992 F.2d 286 (10th Cir. 1993). The Complaint should not be dismissed unless it appears beyond doubt that Plaintiff's can prove no set of facts in support of their claims which would entitle them to relief. *LRL Properties v. Portage Metro Hous. Auth*. 55 F.3d 1097 (6th Cir. 1995). A motion to dismiss for failure to state a claim may be granted only in the clearest cases, and must be denied when additional facts are required before ultimate judgment may be arrived. *Swartz v. Eberly* 212 F.Supp 32 (ED Pa 1962).

# ARGUMENT

**A.  PLAINTIFF'S LEGAL MALPRACTICE CLAIM IS NOT BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS BECAUSE THE COMPLAINT WAS FILED WITHIN THREE YEARS FROM THE DATE THE CLAIM ACCRUED.**

As a threshold matter, the statute of limitations is an affirmative defense and as such is a wholly improper basis for a motion to dismiss. Rather, it is one for resolution at trial, or in certain cases on summary judgment after appropriate discovery. *E.g. Eriline Co. S.A. v. Johnson*, 2006 U.S.App.LEXIS 6621, *13 (4TH Cir.) ("Limitations is an affirmative defense, meaning that the defendant generally bears the burden of affirmatively pleading its existence...Where a defendant has failed to raise the statute of limitations defense by way of its answer, the defense is usually waived."). A complaint need not aver that the statute of limitations is unexpired and resolution of this issue is not proper of in the context of a Rule 12 motion where, as here, it is not impossible that facts showing that the limitations period is not expired on the claims asserted could or will be adduced. *See e.g. Piccard Chemical v. Pemgo Co.*, 940 F.Supp. 1101, 1118 (W.D.Mi. 1986). "As such this issue could not be resolved by a motion for summary judgment and is therefore inappropriate for the Court to address when faced with a motion to dismiss." *Id.* Yet, even if it were appropriate for the Court to review the issue at this stage, Defendants' argument would nonetheless have no merit.

The statute of limitations for a legal malpractice claim is governed by the "discovery rule" in cases where the relationship between the fact of injury and some tortious conduct is obscure at the time of injury. *R.D.H Communs. v. Winston*, 700 A.2d 766, 768 (D.C. 1997). Under this rule, a cause of action accrues when a plaintiff knew or should have known through the exercise of reasonable diligence of: (1) the existence of the injury, (2) its cause in fact, and (3) some evidence

of wrongdoing. *Knight v. Furlow*, 553 A.2d 1232, 1234 (D.C. 1989).

William Gallucci's cause of action against the Defendants did not accrue until, at the very earliest, the injury became known and quantifiable on or after July 16, 2004 – the date OWCP issued the revised calculation for the total back benefits due him. *See* Complaint ¶ 43. *Also, see Fort Meyers Seafood Packers, Inc. v. Steptoe & Johnson*, 381 F.2d 261, 262 (D.C. Cir. 1967). In *Fort Meyers*, the District of Columbia Circuit embraced the "injury rule" for legal malpractice cases and pronounced that the statute of limitations for legal malpractice claims does not begin to run until "actual injury is suffered."[12] *Id*. Specifically, the District of Columbia Circuit addressed the question of when the statute of limitations would begin to run on a legal malpractice action against an attorney who dispensed faulty advise concerning fishing in Venezuelan waters. *Id. at 263*. Applying the "injury rule" the court held that the statute of limitations began to run when appellant's fishing boats were impounded, or when actual injury occurred, rather than when the acts causing the injury occurred, or the giving of faulty legal advice. *Id.* The court went on to say:

> [T]his proposition becomes self evident when one takes time to recognize that a statute of limitations cannot begin to run until the first day on which discovery will show that the plaintiff had a bona fide lawsuit based on injury, meaning a legally cognizable claim that would survive a motion to dismiss. Absent injury there is no lawsuit.

*Fort Meyers,* 381 F.2d at 262. *Wagner v. Sellinger*, 847 A.2d 1157 (D.C. 2004) (until the injury is quantifiable, the statute of limitations does not begin to run). Frederick Road

---

[12] In *Fort Meyers Seafood Packers, Inc. v. Steptoe & Johnson*, 381 F.2d 261, 262 (D.C. Cir. 1967) the court rejected the old rule that the statute of limitations begins to run when 'acts causing the injury occur,' in favor of the 'injury rule.' The court reasoned that legal malpractice is at its heart 'negligence' and should not be treated differently than any other negligence claim. *Id.* Consequently, like a negligence claim, a legal malpractice claim requires duty, breach, causation and <u>injury</u> before the claim can properly be said to have accrued. *Id*.

Limited Partnership v. Brown & Sturm, 756 A.2d 963 (Md. 2000) (discussing discovery rule in context of tax case where client relied on advice for transaction and later had to settle with the IRS due to improper advice). Here, Mr. Gallucci could not quantify injury from Defendants' malpractice and thus could not sue them until the OWCP's back-benefits proceedings were complete; for, until then, Mr. Gallucci did not know and could know what, if anything, his damages against Ashcraft & Gerel might be. Clearly, he could not have quantified damages prior to this date.

Similarly, the statute of limitations in the instant case began to run no earlier than July 16, 2004, when Mr. Gallucci realized the full extent of his injury after the final downward adjustment of his compensation benefits. Complaint at ¶ 43. Prior to the July 16, 2004 calculation as to his back-pay issued by OWCP, Mr. Gallucci did not have a legally cognizable claim in that he did not know what, if any, damages he suffered. On July 16, 2004, OWCP could have awarded him a dollar amount that would have made him largely whole; it could have awarded him nothing or further adjusted his claims downward. And, until then, Mr. Gallucci could not ascertain what benefits he did not receive, how much back interest he was entitled to against Ashcraft and Gerel and what his attorneys fees for attempting to mitigate his damages against Ashcraft & Gerel by pursuing his claims through the agency would be. He would have suffered legal malpractice, but was simply not capable of quantifying "the injury" and thus had no *bona fide* claim against defendants.[13]

---

[13] If Plaintiff's theory on statute of limitations is accepted then anyone in Mr. Gallucci's situation, relying upon the administrative process to seek redress for their grievances must also hedge their bets by suing their attorney as well, in order to prevent the statute of limitations from running while they are navigating the administrative process which could invariable take years. The discovery rule functions to allow individuals an opportunity to seek redress through administrative process rather than immediately sue their attorney for malpractice in order to prevent the running of the statute of limitations.

9

Even using documents outside the pleadings, which is improper, the earliest date Defendants' can seriously even argue that Mr. Gallucci knew or could have known Defendants' legal malpractice – as opposed to his injuries -- is May 15, 2001, the date of Thomas O. Fochs' inquiry letter to OWCP, referencing 5 U.S.C. U.S.C. §§ 8113. *See* Defs. Mem. at Exhibit D. Mr. Gallucci raised the issue with OWCP in the Summer of 2002 and OWCP actually made a ***preliminary*** finding on October 15, 2002.[14] *See* Complaint at ¶ 27. Thus, as of sometime in the summer of 2002 and definitely by October 15, 2002 Mr. Gallucci's claim still had not yet accrued in that he did not have any legally cognizable injury - it remained possible that OWCP would make Mr. Gallucci whole and he certainly hoped and believed that they would do so.[15]

Defendants point to a number of documents – all outside the Complaint – as evidence that Mr. Gallucci's claim had accrued prior to approximately May 15, 2001. *See generally* Defs. Mem. Putting their procedural impropriety aside *arguendo*, the documents are of no help. Defendants' allege that on August 20, 1985, Plaintiff wrote a letter to Kathryn Holbrook at the DOL in which he raised the discrepancy between his current wages and the wages being paid at the Bureau. *See* Defs.

---

[14]It is not reasonable to require Plaintiff to sue for legal malpractice prior to exhausting his administrative remedies. Such a requirement would cause the courts to be clogged with legal malpractice claims brought by litigants trying hedge their bets against an adverse administrative outcome years down the road. If a plaintiff is made whole from an administrative ruling, his claim will never have accrued because he never had actual cognizable injuries.

[15] As discussed more thoroughly in this Memorandum, any clue that Mr. Gallucci had that Mr. Schaffer committed malpractice by October 15, 2002 was subverted when Mr. Gallucci had a forty minute conversation with an Ashcraft & Gerel, LLP attorney who attempted to convince Mr. Gallucci that no wrongdoing occurred. *See* Complaint at ¶ 25. This discussion alone, given the fiduciary nature of the relationship and prior discussions between Mr. Gallucci and Ashcraft & Gerel in the 1980s that can be brought forward and demonstrated in the event this motion is converted to a Rule 56 motion, show that Mr. Gallucci was not on notice of his claims; and, as fiduciaries, Defendants cannot represent to him that nothing can be done and then argue he should have figured out sooner that he was being lied to.

Mem. at Exhibit A. However, a review of the letter reveals Plaintiff was concerned about a reevaluation of his loss of wage earning capacity due to a medical examination and making sure he was receiving his cost of living and inflation adjustments. *Id.* The letter has nothing to do with any claim for enhanced pay rate pursuant to 5 U.S.C. §§ 8113 and certainly does not put Mr. Gallucci on any kind of notice of this claim.

Next, Defendants produce a February 10, 1989 letter from Mr. Gallucci to Mr. Cain at OWCP in which Defendant's allege Mr. Gallucci sought retroactive benefits and contacted numerous attorneys to advise him. *See* Defs. Mem. at Exhibit B. Defendants have taken their quotations out of context and misrepresented the letter. In fact, in his letter Mr. Gallucci writes: "... the numerous attorney's I contacted would not take my case because of the way OWCP is organized." *Id.* This hardly sounds like *he had advisors to provide him counsel as to his claimed injury,* as Defendants' suggest in their Memorandum. *See* Defs. Mem. at 5. Moreover, this letter has nothing to do with enhanced pay rate pursuant to 5 U.S.C. §§ 8113 and certainly does not put Mr. Gallucci on any kind of notice of his claim. *See Id.*

Lastly, Defendants point to a letter written by attorney Mark Cobey, on behalf of Plaintiff on January 16, 1997 requesting Plaintiff's complete file from OWCP. *See* Defs. Mem. at Exhibit C. This letter without more does not rise to the level of putting Plaintiff on notice that he has a legal malpractice claim against Defendants' and cannot serve as the basis to dismiss his Complaint for failure to state a claim. There is no evidence that Mr. Cobey received any documents from OWCP or what documents he received.

Defendants' statute of limitations defense also fails because any statute of limitations ceased to run during the period Defendants actively concealed their breach of duty. "Fraudulent

concealment of the existence of a cause of action tolls the running of a conventional statute of limitations." *Weisberg v. Williams, Connolly & Califano*, 390 A.2d 992, 996 (D.C. 1978). "And in the legal malpractice field, there is widespread agreement that the statute will not run where the existence of a cause of action for legal malpractice has been fraudulently concealed by affirmative representations." *Id*. "Concealment will exist if the attorney has knowingly made false representations; it is only then that his conduct, by way of estoppel or otherwise, will toll the running of the statute." *Id*.

In November of 2002, Defendant called Ashcraft & Gerel, LLP and spoke with an attorney at length regarding Mr. Schaffer's representation and the applicability of 5 U.S.C. §§ 8113 to his case. *See*Complaint at ¶ 25. After discussing whether 5 U.S.C. §§ 8113 applied to him and whether his wages should have been calculated at that of a journeyman he was told by the Ashcraft & Gerel attorney: "there is nothing we can do to help you." *Id.* Clearly the attorney, informed as to the facts of Mr. Gallucci's case, made this statement in order to conceal his firms negligence and to discourage Mr. Gallucci from pursuing a claim. The advice given by the Defendant in November of 2002 was calculated to conceal Mr. Schaffer's malpractice.

According to prevailing District of Columbia caselaw, defendants' concealment will toll the statute of limitations. *Weisberg*, 390 A.2d, 996. Clearly, facts can and will be produced at trial which will prove plaintiffs well-plead allegations. Moreover, the standard to be applied in deciding a Rule 12(b) motion is, accepting all allegations in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party, whether judgment as a matter of law can be granted. Based on the face of the pleadings, judgment as a matter of law is inappropriate. At the very least,

a question of fact exists that is only properly decided by the trier of fact.[16]

**B.     MR. GALLUCCI'S CLAIM IS NOT BARRED BY THE EQUITABLE DOCTRINE OF LACHES AND SUCH A FINDING WOULD BE INAPPROPRIATE FOR A RULE 12(b) MOTION AS IT IS A DETERMINATION THAT WOULD BE A QUESTION OF FACT FOR THE FINDER OF FACT TO DECIDE.**

The equitable doctrine of Laches requires two elements to be proved: (1) an unreasonable and unexplained delay by one party, and (2) prejudice to the other party resulting from the delay. The party asserting the defense has the burden of asserting both elements. *American University Park Citizens Ass'n v. Burka* 400 A.2d 737, 740 (D.C. 1979). Issues of Laches is generally not properly decided on the basis of pleadings alone. *Webster v. Great American Ins. Co.* 544 F.Supp 609 (ED Pa 1982).

Here, there is no unreasonable or unexplained delay. Mr. Gallucci first had knowledge of Defendants' legal malpractice on approximately May 15, 2001 when attorney Thomas O. Fochs, acting on behalf of Plaintiff, sent a letter to OWCP inquiring into, among other things, increased rate of compensation under 5 U.S.C. §§ 8113. Plaintiff wasted no time in following up with OWCP during the summer of 2002 when he brought the erroneous pay rate calculation to the attention of OWCP, and requested that the calculation be reviewed and corrected according to the provisions of 5 U.S.C. §§ 8113. Plaintiff did not sit on his rights or delay after he realized that his compensation payments should have been enhanced based on the progression of his apprentice class to journeyman status in accordance with 5 U.S.C. §§ 8113.

The second element of laches is lacking as well. In *American University Park* the court held that in order to invoke laches: "the party to whom laches is imputed has knowledge of his rights, and

---

[16]Mr. Gallucci's mental state and disabilities, as outlined in the Complaint, are also highly pertinent to any statute of limitations analysis and bear directly on when he should have "discovered" his claims. Defendants glaringly do not address this issue at all.

an ample opportunity to establish them in the proper forum; and by reason of delay the adverse party has good reason to believe that the alleged rights are worthless, or have been abandoned." 400 A.2d at 742. Defendant can hardly be said to have been led to believe that Plaintiff's claims were worthless or had been abandoned. Until approximately May 15, 2001, neither party was aware Plaintiff had a legal malpractice claim. Defendants' were put on notice that they probably committed legal malpractice when Defendant called Ashcraft & Gerel, LLP sometime in November of 2002 inquiring into whether they could fix the mess that Mr. Schaffer created. *See* Complaint ¶ 25. Defendants' used that opportunity to try and convince Plaintiff that no malpractice occurred. *Id.*

Moreover, if the elements of laches do not appear on the face of a Complaint filed within the statute of limitations, laches is not a suitable basis to argue the Complaint has failed to state a claim upon which relief can be granted. *Nissan Motor Co. v. BMW Holding Corp.* 64 USPQ2d. 1797 (ND Ill 2002). For the reasons stated above, the Complaint was filed within the statute of limitations period and thus cannot be barred by the doctrine of laches.

C.  **THE OWCP'S FINDING THAT PLAINTIFF SHOULD HAVE RECEIVED BENEFITS AS A JOURNEYMAN AND NOT AN APPRENTICE PURSUANT TO 5 U.S.C. § 8113 IS BINDING ON DEFENDANTS, OR IS AT LEAST PRIMA FACIE EVIDENCE OF MALPRACTICE. EVEN IF SUCH A DETERMINATION WERE TO BE MADE BY THIS COURT IT WOULD BE A QUESTION OF FACT TO BE DETERMINED BY THE TRIER OF FACT AND INAPPROPRIATE FOR A RULE 12(b) MOTION**

It is incredible that Defendants' seek to second guess the findings of OWCP after the agency conducted approximately two years of investigations, hearings and appeals and arrived at the conclusion that Plaintiff qualified under 5 U.S.C. §§ 8113 to be paid at a journeyman status rather

than apprentice status.[17]

> 5 U.S.C. § 8113 provides in pertinent:
>
> (a) If an individual: (1) was a minor or employed in a learner's capacity at the time of injury; and (2) was not physically or mentally handicapped before the injury; the Secretary of Labor, on review under section 8128 of this title after the time the wage-earning capacity of the individual would probably have increased but for the injury, shall recompute prospectively the monetary compensation payable for disability on the basis of an assumed monthly pay corresponding to the probable increased wage earning capacity.

Defendants' attempt to switch the burden of proof to Plaintiff by demanding that Mr. Gallucci should be required to "demonstrate he was employed in a Learner's capacity and demonstrate a probability of advancement to the next compensation level" while employed at the Bureau in order to prevent his Complaint from being dismissed because it fails to state a claim upon which relief can be granted. *See* Defs. Mem. at p. 10. After two years of investigation, hearings and appeals during the administrative process it has been conclusively determined that Plaintiff should have received benefits at the level of a journeyman rather than an apprentice. Even so, this would certainly be an issue of fact for a trier of fact to decide.

## CONCLUSION

For the foregoing reasons, the Plaintiff, respectfully request that the Defendants' Motion to Dismiss for Failure to State a Claim Upon Which Relief May be Granted should be denied.

---

[17] Mr. Gallucci's with battle to have OWCP recognize that he should have received benefits at the level of a journeyman rather than an apprentice began in the Summer of 2002 and continued through July 16, 2004.

Respectfully Submitted

_____/s/_____
Matthew H. Simmons, MD14700
Simmons & Associates, Chartered
7347 Wisconsin Avenue
Suite 200
Bethesda, Maryland 20814
(301) 986-8444

### REQUEST FOR HEARING

Plaintiff respectfully requests a hearing on Defendants' Motion to Dismiss.

_____/s/_____

Matthew H. Simmons