**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| WILLIAM T. GALLUCCI, | * |
| Plaintiff, | * |
| v. | * Case No.: **1:06CV00020 (GK)** |
| | * Judge Gladys Kessler |
| MARK L. SCHAFFER, *et al.*, | * |
| Defendants. | * |

**DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS FOR
<u>FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED</u>**

Defendants, Mark L. Schaffer, Ashcraft & Gerel, LLP, Martin E. Gerel, and James A. Mannino ("Defendants"), by and through their undersigned counsel, hereby respectfully submit this Reply to Plaintiff's Opposition to Defendants' Motion to Dismiss for Failure to State a Claim Upon Which Relief May Be Granted.

<u>ARGUMENT</u>

**I.     Introduction**

Defendants have filed a Motion To Dismiss raising statute of limitations, laches and failure to state a claim (collateral estoppel) defenses. Plaintiff's Opposition attempts to deflect attention from the decisive alternative defenses which support dismissal and should be rejected. Two of Plaintiff's theories can be summarily rejected. Contrary to Plaintiff's assertions, it is not "improper" to accompany a Rule 12(b)(6) motion with matters outside the four corners of a complaint. Indeed, the Rule expressly recognizes the viability of that procedure. In addition, contrary to Plaintiff's unsupportable representation, the Complaint that the undersigned received through

service on their clients was not a verified complaint. Therefore, Plaintiff's arguments relying on the supposed verification of the claims are without support. Finally, Plaintiff completely misapprehends the controlling legal principles which govern the statute of limitations defense, ignores the support which exists here to impose the laches defense, and fails to recognize that the legal error committed by the OWCP cannot bind these Defendants in this separate lawsuit. Indeed, Plaintiff admits knowing of "legal malpractice" by May 15, 2001, more than four (4) years before the Complaint was filed.

Accordingly, the Motion To Dismiss should be granted or, in the alternative, treated as a Motion For Summary Judgment and granted.

## II. Plaintiff's Claims Are Plainly Barred By The Statute Of Limitations

Nothing in the Plaintiff's response refutes the statute of limitations analysis in Defendants' Motion to Dismiss. First, Plaintiff's response improperly confuses "injury" with "damages." Plaintiff correctly notes that the statute of limitations is governed by the "discovery rule," whereby a cause of action accrues when a plaintiff knows or should know, through the exercise of reasonable diligence, of: (1) the existence of an injury, (2) its cause in fact, and (3) some evidence of wrongdoing. Wagner v. Sellinger, 847A.2d 1151, 1154 (D.C. 2004). Yet, Plaintiff then leaps to the entirely unsupportable conclusion that despite the above-referenced standard, his alleged cause of action against these Defendants "did not accrue until, at the very earliest, the injury became known and quantifiable..." Plaintiff's Opposition To Motion To Dismiss For Failure To State A Claim Upon Which Relief May Be Granted ("Plaintiff's Opp.") at 8. Plaintiff says because he could not "quantify" his injury, he could not sue until he knew what his full, alleged damages against the Defendants might be. Plaintiff's Opp. at 9. This

statement is contrary to District of Columbia law and must be rejected.

Similarly, the Plaintiff argues that even as late as October 15, 2002, his claim had not accrued "in that he did not have any legally cognizable injury- it remained possible that OWCP would make Mr. Gallucci whole..." Plaintiff's Opp. at 10. Yet, Plaintiff concedes awareness of his injury — and indeed of his "legal malpractice" claim — as of May 15, 2001, but claims only ignorance as to the full extent of his damages. Plaintiff's Opp. at 13. It is plain, Plaintiff's "injury" was apparent at least by May, 2001. If his damages were not fully known, this does not save the Complaint from the bar of the statute of limitations under the governing case law to be applied by this Court.

In the District of Columbia, "not all damages need be sustained, or even identified, for the cause of action to accrue; any appreciable and actual harm flowing from defendant's conduct is sufficient." Ideal Electronic Security Co., Inc. v. Brown, 817 A.2d 806, 809 (D.C. 2003) (emphasis added); Beard v. Edmonson & Gallagher, 790 A.2d 541, 546 (D.C. 2002). The statute of limitations "begins to run as soon as the three criteria [knowledge of an injury, some knowledge of its cause in fact, and some evidence of wrongdoing] are satisfied; it does not await the injured person's discovery of all of the essential elements of a possible claim: duty, breach, causation, damages." Diamond v. Davis, 680 A.2d 364, 372 (D.C. 1996); see also Morton v. National Med Enters., 725 A.2d 462, 468 (D.C. 1999) (noting that "the discovery rule does not, however, permit a plaintiff who has information regarding a defendant's negligence, to defer suit and wait to see whether additional injuries come to light"); Cevenini v. Archbishop of Washington, 707 A.2d 768, 771 (D.C. 1998) (noting that it is unimportant that the plaintiff "comprehend the full extent of all possible sequelae... for the law of

-3-

limitations requires only that she have inquiry notice of the existence of a cause of action..."). In short, Plaintiff's argument that there is <u>no injury</u> until all damages are "quantifiable" is simply contrary to the law in the District of Columbia and cannot apply. Plaintiff's reliance upon <u>Wagner v. Sellinger</u>, 847 A.2d 1151 (D.C. 2004), for the proposition that "until the injury is quantifiable, the statute of limitations does not begin to run" is similarly misplaced. <u>Wagner</u> notes that when an attorney makes a mistake in the course of prosecuting a lawsuit, the mistake is only potential in nature – that is to say, until the lawsuit is resolved, it is unclear if the error will result in an injury to the plaintiff. See <u>Wagner</u>, 847 A.2d at 1156-57. <u>Wagner</u> does not support the theory that a cause of action only accrues once an injury becomes fully "quantifiable" — only that there must be <u>an injury</u>, which is simply one of the elements of the discovery rule.

Plaintiff also cites to <u>Fort Meyers Seafood Packers, Inc. v. Steptoe & Johnson</u>, 381 F.2d 261 (D.C. Cir. 1967). There, the District of Columbia Circuit noted that the injury occurred when the legal advice resulted in negative consequences – namely, the seizure of plaintiff's boats. That case does not stand for the proposition that an injury must be fully "quantifiable" before a cause of action accrues; it merely stands for the proposition that "absent injury, there is no lawsuit." 381 F.2d at 262.

Plaintiff's attempt to ignore the applicable law should be rejected by this Court. As stated in <u>Ideal Electronic Security</u>, "not all damages need be sustained, or even identified, for the cause of action to accrue..." 817 A.2d at 809. There is no requirement in the District of Columbia that all damages be "quantifiable" prior to the cause of action accruing. In fact, to follow the Plaintiff's theory regarding the necessity that damages be entirely "quantifiable" before a cause of action to accrue would

obliterate the discovery rule, as a plaintiff would not have to be aware of some injury, but the full extent of his or her damages as well. Existing law will not support such a result.

Again confusing "injury" with "damages", Plaintiff argues that prior to July 16, 2004, he "did not know what, if any, damages he suffered." Plaintiff's Opp. at 9. Mr. Gallucci notes that the OWCP could have awarded him enough money to make him "largely whole; it could have awarded him nothing or further adjusted his claims downward." Id. These musings have nothing to do with his claimed injury. Plaintiff alleges he has been underpaid for approximately 28 years as a result of negligence by the Defendants. Plaintiff's Opp. at 3. Furthermore, the Plaintiff has alleged that he has "incurred and continues to incur substantial professional fees seeking to obtain, defend and collect the back-benefits that Mr. Schaffer failed to seek..." Complaint at ¶ 47. The fact that the Plaintiff has incurred such fees is certainly an injury which pre-existed any final action by the OWCP by years, thereby triggering the limitations period well outside the three-year window.

Plaintiff seems to suggest that the statute of limitations should have tolled while the Plaintiff pursued his administrative remedies. Yet, Plaintiff fails to present a single case suggesting that where a plaintiff *chooses* to pursue administrative resolution to a claim, the statute of limitations should toll for the duration of the administrative action. The law in the District of Columbia stands directly opposed to the Plaintiff's argument. The District of Columbia does not recognize the concept of "equitable tolling," where the filing of an action in one jurisdiction tolls the statute of limitations in another jurisdiction. See Bonds v. Serrano, 566 A.2d 47 (D.C. 1989). In Bonds, the plaintiff filed suit against

the District of Columbia in federal district court, then, after the statute of limitations, concurrently sued the District of Columbia in D.C. Superior Court. When the U.S. Court of Appeals for the D.C. Circuit dismissed the federal case for lack of jurisdiction over the District of Columbia, the District of Columbia sought dismissal in the D.C. Superior Court case under the statute of limitations. *Id.* at 48. The D.C. Court of Appeals quoted with approval language from the D.C. Superior Court, noting that the statute of limitations is "inherently an arbitrary strict rule providing a definite termination of the time period within which an injured party may file suit," and that the D.C. Court of Appeals has not allowed a general equitable exception to the statute of limitations, and that any such exception should originate from the legislature, and not the judiciary. *Id.* at 48-49. The court rejected the argument that the statute should be tolled, even where the defendant was on notice and the plaintiff made a good faith mistake. This Court should also reach the same result.

In Namerdy v. Generalcar, 217 A.2d 109 (D.C. 1966), the Court faced a similar issue where a plaintiff filed suit in New York, where jurisdiction was proper, but willingly dropped the case and filed suit after the statute of limitations had run in the District of Columbia, where jurisdiction was also proper. The Court dismissed the case, noting that "[t]here is no basis for finding that filing suit in another jurisdiction tolls the statute of limitations here..." *Id.* at 113.

The Plaintiff is similarly mistaken as to the impact of the letters provided to the Court with the Defendants' Motion To Dismiss. Each of those letters clearly demonstrates an instance where the Plaintiff was on inquiry notice of the elements of his cause of action. To the extent that the Plaintiff was concerned about his rate of

compensation, he should have exercised reasonable diligence and discovered his injury, its alleged cause, and some evidence of wrongdoing. See Davis, *supra* at 372. Plaintiff makes several novel arguments in attempting to refute the importance of these letters. First, with regard to a letter written by attorney Mark Cobey, Plaintiff argues that the fact that attorney Cobey requested the Plaintiff's entire file from the OWCP regarding the Plaintiff's claim for workers' compensation benefits is meaningless, as there "is no evidence that Mr. Cobey received any documents from the OWCP or what documents he received." Plaintiff's Opp. at 11. What is of moment is the fact that Plaintiff was concerned and was investigating the appropriateness of his compensation rate from the OWCP through counsel. Even if Mr. Cobey never saw a single document, the fact that Plaintiff's attorney drafted the letter demonstrates that the Plaintiff was aware of the issue, should have exercised due diligence to discover his alleged injury and its cause, and is held to have knowledge of the facts that such due diligence would have disclosed, thus triggering the limitations period. See Davis, *supra* at 372.

Plaintiff also attempts to deflect the impact of a letter of May 15, 2001, written by his attorney, Thomas Fochs, to the OWCP. In that letter, attorney Fochs specifically argued that the Plaintiff was entitled to increased compensation under 5 U.S.C. § 8113. See Letter of May 15, 2001 at 6, 33-36 (Defendants' Motion to Dismiss at Exhibit D). In response to this clear articulation of the Plaintiff's injury, the Plaintiff is left to argue that Mr. Fochs, a licensed attorney in California and Colorado, was actually a "non-lawyer representative rather than Mr. Gallucci's lawyer." Regardless of what impact Plaintiff believes that moniker provides, Plaintiff admits, in his own words, that "Mr. Gallucci <u>first had knowledge of Defendants' legal malpractice on approximately May 15, 2001</u>, when

attorney Thomas O. Fochs, acting on behalf of Plaintiff, sent a letter to OWCP inquiring into, among other things, increase rate of compensation under 5 U.S.C. § 8113." Plaintiff's Opp. at 13 (emphasis added). Thus, <u>Plaintiff admits</u> that he was aware of the 5 U.S.C. § 8113 issue by May 15, 2001 (at the very latest — Mr. Fochs does not inquire into an increased rate of compensation, he actually makes an argument as to the Plaintiff's entitlement to that increased rate under 5 U.S.C. § 8113). <u>This was four years prior to the date that the Plaintiff's Complaint is deemed to have been filed</u> in this Court pursuant to the parties' tolling agreement of April 27, 2005. Since Plaintiff admits awareness of the Defendants' alleged malpractice no later than May 15, 2001, Plaintiff necessarily was aware of: (1) an injury (his compensation was lower than he alleges it should have been); (2) its cause (the fact that his attorney allegedly failed to pursue increased benefits under 5 U.S.C. § 8113 in the early 1970's); and, (3) some evidence of wrongdoing (Plaintiff's professed knowledge of "Defendants' legal malpractice"). Therefore, under the discovery rule, the cause of action accrued in 2001 and became barred under the statute of limitations on May 15, 2004, nearly one year before suit was filed.

Finally, left with no recourse other than revisionism, Plaintiff seeks to avoid the plain statute of limitations bar by claiming that an alleged conversation between the Plaintiff and an unnamed attorney at the Defendant law firm constituted "fraudulent concealment," so as to toll the statute of limitations. Plaintiff's Opp. at 11. This contention must be rejected. No such claim is pending in the Complaint and the only case which he cites as authority goes on to state that "one well established defense to a claim of fraudulent concealment is that the plaintiff knew, or by the exercise of due

diligence could have known, that he may have had a cause of action." Weisberg v. Williams, Connolly & Califano, 390 A.2d 992, 995-96 (D.C. 1978). In fact, in Weisberg, the Court of Appeals affirmed the dismissal of the plaintiffs' cause of action as the facts of the case demonstrated that the plaintiffs were on actual notice of their cause of action prior to the alleged concealment. Id. at 996. Here, in the Plaintiff's own words, "Mr. Gallucci first had knowledge of Defendants' legal malpractice on approximately May 15, 2001..." Plaintiff's Opp. at 13. Plaintiff's alleged phone conversation with an anonymous attorney at the Defendant law firm did not occur until November of 2002. Complaint at ¶ 25. As such, even if the Court were to credit the unverified Complaint's allegation of "fraudulent concealment" in the absence of any claim of fraud, Plaintiff's admitted, actual notice of his cause of action in 2001 defeats the contention that a later concealment tolled the statute of limitations. Thus, there is no merit to the "fraudulent concealment" argument.

Further, "the existence of a fiduciary relationship... does not alter the rule that the limitations period [begins] to run as soon as [the plaintiff is] on inquiry notice." Ray v. Queen, 747 A.2d 1137, 1142 (D.C. 2000). The Plaintiff had not been represented by the Defendants for approximately 26 years as of November of 2002. Further, the language stated by the Plaintiff as evidence of fraudulent concealment does not rise to that level. The anonymous attorney allegedly told Plaintiff, "there is nothing we can do to help you." Complaint at ¶ 25. Plaintiff does not explain how this language amounted to concealing the Plaintiff's cause of action from him, or concealed the true facts of his case. It cannot be said that the quoted language amounts to a "false representation," nor that the statement was made "clearly... to conceal his firm's negligence and

-9-

discourage Mr. Gallucci from pursuing a claim." Plaintiff's Opp. at 12. Regardless, the Plaintiff was on actual notice of his "claims" more than a year prior to the alleged conversation, and as such, even if the conversation truly amounted to "fraudulent concealment," it could have no effect on the running of the statute of limitations, and this Court should so determine.

For all of these additional reasons, the Plaintiff's claims are barred by the statute of limitations, as a matter of law.

### III.   Alternatively, Plaintiff's Claims are Barred by the Doctrine of Laches

Plaintiff asserts that laches should not apply to this case, arguing that both elements of laches are not satisfied. However, Plaintiff assumes that laches somehow acts as a tolling mechanism. It does not. The doctrine of laches focuses <u>not on the actions of the plaintiff, but on the effect of the plaintiff's inaction</u> on the defendant's ability to thoroughly defend a lawsuit. Laches "is designed to prevent enforcement of stale claims." <u>In re Estate of Derricotte</u>, 885 A.2d 320, 325-26 (D.C. 2005). Plaintiff's suit was filed 28.6 years after the end of the attorney-client relationship. This is *prima facie* an unreasonable delay, particularly since it is substantively unexplained, even today. Even using the latest possible date that Plaintiff had knowledge of the alleged malpractice (May 15, 2001), the defendant waited for four years to file suit. The Plaintiff alleges that he "wasted no time in following up with OWCP" after May of 2001, but admits that he did not pursue his rights with the OWCP for more than a year after his discovery. Further, Plaintiff did not pursue his rights with the Defendants until November of 2002, almost one and a half years after his discovery. Plaintiff offers no

explanation for this delay.

Alternatively, Plaintiff addresses only one aspect of the prejudice that exists. Plaintiff conveniently ignores the authority cited to support the proposition that after 28.6 years, "...memories dim, evidence is lost, and prejudice may be inferred more readily." Fed. Mktg. Co. v. Va. Impression Prods. Co., 823 A.2d 513, 525-26 (D.C. 2003). Plaintiff's argument assumes that the prejudice to the Defendant can only be measured from the time that the Plaintiff claims he became fully aware of his cause of action, which is not the law which should apply. The authority cited by the Defendants regarding the prejudice they face after 28.6 years is objective, and focuses on the impact of the entire period of delay on the Defendants. As such, Plaintiff's arguments do not defeat the laches defense, and dismissal is warranted on this independent ground.

**IV.    Alternatively, The Determination Of The OWCP Cannot Bind The Defendants, And The Plaintiff Is Not Entitled To The Pay Increases Under 5 U.S.C. § 8113**

Plaintiff argues that the determination by the OWCP that Plaintiff qualified for increased benefits under 5 U.S.C. § 8113 should bind the Defendants, and that in the alternative, the determination is a question of fact, not of law. Plaintiff is incorrect on each assertion.

The determination of the Plaintiff's eligibility under the statute, where no facts are in dispute, is clearly a question of law, and not of fact. Church of Scientology v. IRS, 792 F.2d 193, 169 (D.C. Cir. 1986) (noting that "[s]tatutory interpretation has always been a question of law..."); Gloss v. Railroad Retirement Bd., 313 F.2d 568, 571 (D.C.

Cir. 1962) (noting that statutory interpretation is a question of law); <u>United States v. Jamieson Science & Engineering</u>, 191 F.Supp.2d 19, 22 (D.D.C. 2002) (noting that where material facts are undisputed, issues of statutory interpretation are questions of law). Further, there can be no collateral estoppel against these Defendants where the determination was made absent their involvement. As the Defendants were not parties to Plaintiff's OWCP proceeding, the application of collateral estoppel against the Defendants is unsupportable. As stated by the Supreme Court, "where... the application of offensive estoppel would be unfair to a defendant, the trial judge should not allow the use of offensive collateral estoppel." <u>Parklane Hosiery Co. v. Shore</u>, 439 U.S. 322, 331 (1979). Given that the Defendants were in no way party to the determination made by the OWCP, it would be unfair to allow a non-official determination by the OWCP to be binding upon the Defendants. <u>Donovan v. U.S. Postal Service</u>, 530 F.Supp. 894, 899 (D.D.C. 1981) (noting that "[u]ltimately, the court should not permit the application of offensive collateral estoppel if it would be unfair to the defendant").

Finally, the Plaintiff essentially ignores and therefore concedes the arguments put forth by the Defendants as to Mr. Gallucci's eligibility. Therefore, his claims fail on their merits given Plaintiff's ineligibility under 5 U.S.C. § 8113. Accordingly, for these additional reasons, dismissal is warranted.

## CONCLUSION

Plaintiff, by his own admission, was on inquiry notice of his alleged cause of action no later than May 15, 2001 (if not earlier). He admits actual notice as of that date. It is irrelevant that the Plaintiff may not have been aware of the full extent of his

damages at that time.  Plaintiff provides no support for his contention that administrative action tolls the statute of limitations, and District of Columbia law does not recognize such a concept.  Furthermore, the unfounded argument of "fraudulent concealment" is irrelevant as prior actual notice defeats a claim of tolling by "fraudulent concealment" and the Plaintiff concedes actual notice more than a year prior to the alleged "fraudulent concealment."  In sum, the Plaintiff has effectively admitted that the statute of limitations ran before he filed his suit and he has provided no recognized reason as to why his claim should not be barred.  Finally, the Plaintiff ignores the applicable law with regard to the bar of laches, and incorrectly argues that statutory interpretation is a question of fact, and not of law.  Plaintiff has presented nothing to effectively rebut the arguments set forth by the Defendants in their Motion to Dismiss.  Therefore, for the foregoing reasons, as well as those set forth in the Motion To Dismiss, this Court should grant the Defendants' Motion to Dismiss.

Respectfully submitted,

JORDAN COYNE & SAVITS, L.L.P.

By: /s/ David P. Durbin
David P. Durbin  #928655
Padraic K. Keane  #486285
1100 Connecticut Avenue, NW
Suite 600
Washington, DC  20036
(202) 296-4747
Fax:  (202) 496-2800
E-mail:  d.durbin@jocs-law.com
E-mail:  p.keane@jocs-law.com

Counsel for Defendants

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing Defendants' Reply To Plaintiff's Opposition To Defendants' Motion To Dismiss For Failure To State A Claim Upon Which Relief May Be Granted was mailed, first class and postage prepaid, this 30th day of May, 2006 to:

>Matthew H. Simmons, Esquire
>SIMMONS & ASSOCIATES, CHARTERED
>Suite 345
>4733 Bethesda Avenue
>Bethesda, MD 20814

_____
David P. Durbin