UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WILLIAM T. GALLUCCI )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MARK L. SCHAAFER, et al. )<br>)<br>Defendants. ) | Case No: 1:06cv00020 (GK) |

**SUPPLEMENTAL MEMORANDUM IN OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS. OR IN THE
ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT**

NOW COMES William T. Gallucci, ("Plaintiff") by and through his undersigned counsel Matthew H. Simmons, Seann P. Malloy and Simmons & Associates, Chartered, in accordance with this Court's June 29, 2007 Order [Docket No.: 14], hereby submits this Supplemental Memorandum In Opposition to Defendants' Motion to Dismiss or In The Alternative For Summary Judgment and states the following in support:

**INTRODUCTION**

Defendants argue that Plaintiff's Complaint should be summarily dismissed because it is time barred by the applicable statute of limitations, time barred by the equitable doctrine of laches and because Plaintiff cannot demonstrate the underlying injury in the first place. Defendants argument fails because Plaintiff filed his complaint within three years of knowing of his claims, and Defendants through their actions and omissions attempted to conceal the claims Plaintiff had against them and lull Plaintiff into inaction.

On approximately October 20, 1973, Plaintiff retained Mr. Shaffer and the law firm of Ashcraft & Gerel, LLP to represent him in prosecuting his claim for workers compensation benefits

as a result of his on-the-job injury while employed for the United States Bureau of Engraving. *See*, Declaration of William Gallucci, ¶ 4,5, attached hereto as **Exhibit A**. Plaintiff received workers compensation benefits at the pay level for an apprentice even though he was clearly entitled to benefits at the journeyman level pursuant to U.S.C. § 8113. Gallucci Decl. ¶ 8. *Also see*, ECAB, Decision and Order, December 27, 2006, attached hereto as **Exhibit B**. Defendants failed to competently represent Plaintiff and obtain the benefits due him under U.S.C. § 8113. Gallucci Decl. ¶ 11. The earliest Plaintiff could have been aware of his claims and injury was approximately July 16, 2004 - when his claims and injury became known and quantifiable, or the date the Office of Workers Compensation issued the revised calculation for the total back benefits due him. During November 2002, Plaintiff contacted his law firm to see if they could help and to inquire into what went wrong. Gallucci Decl. ¶ 13. During this forty minute telephone call, as associate from Ashcraft & Gerel, LLP denied the Defendants did anything wrong and told Plaintiff "there is nothing we can do." *Id.*

**Evidence Presented By Defendants**

Defendants contend that Mr. Gallucci had notice that he was being paid at the wrong rate pursuant to 5 U.S.C. § 8113.[1][2] To this end, Defendants attach several letters produced from the files of the Office of Workers Compensation as proof that Plaintiff knew about his 5 U.S.C. § 8113 claim

---

[1] Based on 5 U.S.C. § 8113 and longstanding labor policy, Mr. Gallucci's benefits should have been based on the pay rate for a journeyman printer, not an apprentice printer.

[2] 5 U.S.C. § 8101, *et seq* today is largely the same as it was in 1973 in that it still provides for persons injured while in an apprentice position to enhanced compensation as if they would have completed their program. For all purposes relevant to this case, the statutory provision are the same. *See,* 5 U.S.C. § 8113.

2

to be paid based on journeyman status and not apprentice status.[3] However, a close reading of the attached letters reveal that they have nothing to do with Mr. Gallucci's pay rate relative to his status as an apprentice when he was injured (his eventual claim before the Office of Workers Compensation). Moreover, Defendants draw numerous inferences for which they are not entitled to at the summary judgment stage from the attached exhibits.

Defendants' have attached an August 30, 1985 letter from Plaintiff to Kathryn Holbrook, an employee at the Department of Labor. *See*, Defs' **Ex A**. Defendants state that Plaintiff's letter "rais[es] the issue of a discrepancy between his current wages and the wages being paid in the Bureau of Engraving and Printing." *See*, Defs Memo at. 5. However a close reading of this letter reveals absolutely no discussion of Plaintiff's claim to be paid compensation based on journeyman status and not apprentice status pursuant to 5 U.S.C. §8113. Rather, in his letter to Ms. Holbrook, Plaintiff discusses a medical examination, cost of living increases, compensation rate adjustment to reflect additional needs of children. *See*, Defs' **Ex A**. Nothing in this letter comes close to suggesting Plaintiff knew he should receive benefits based on journeyman status rather than apprentice status pursuant to 5 U.S.C. § 8113.

Defendants' **Exhibit B** is a letter dated February 10, 1989, from William Gallucci to a Mr. Cain at the Office of Workers Compensation. Defendants draw numerous inferences from this letter to which they are plainly not entitled for purposes of summary judgment. For instance, Defendants draw an inference that Plaintiff's request for retroactive compensation benefits is somehow notice that Plaintiff knew (or should have known) that he should receive benefits based on journeyman

---

[3] Plaintiff assumes these letters came from the Office of Workers Compensation, but without any verification of their Though Plaintiff does not assert they are false, without some foundation for the attached letters summary dismissal at this stage is inappropriate.

status rather than apprentice status pursuant to 5 U.S.C. § 8113. *See*, Defs' **Ex. B.** Defendants are not entitled to this inference. In his February 10, 1989 letter, Plaintiff discusses meeting with attorneys who refused to take his case. Defendants draw an inference that Plaintiff sought to hire these attorneys to amend his benefits to be based on journeyman status rather than apprentice status pursuant to 5 U.S.C. § 8113. Defendants state that the February 10, 1989 letter "taken as true, suggests he had advisors to provide counsel as to his claimed injury and its source." Defs'. Opp. Memo. at p. 5. Defendants are not entitled to this inference either. Nothing in this letter suggests Plaintiff knew he should receive benefits based on journeyman status rather than apprentice status pursuant to 5 U.S.C. § 8113. Rather, this letter concerns an appeal from a loss of wage earning capacity decision and vocational rehabilitation options.

Defendants' **Exhibit C** is a January 16, 1997 letter from attorney Mark Coby to the Office of Worker Compensation requesting Plaintiff's file. Nothing in this letter suggests Plaintiff knew he should receive benefits based on journeyman status rather than apprentice status pursuant to 5 U.S.C. § 8113 - or that Mark Coby was representing Plaintiff for this purpose. In his letter, Mark Coby notifies the Office or Worker Compensation that he is representing Plaintiff "in his claim for Federal Workers Compensation benefits." However, as Plaintiff's other letters suggest, he made other claims for increased Workers Compensation benefits based on vocational rehabilitation credits, cost of living increases and credits for the cost of raising children. Defendants' offer **Exhibit C** for the proposition that Mark Coby was representing Plaintiff with respect to his benefits based on journeyman status rather than apprentice status pursuant to 5 U.S.C. § 8113. Defendants are not entitled to this inference for purposes of summary judgment. Moreover, there is absolutely no evidence that the Department of Labor or Office of Workers Compensation ever forwarded

4

Plaintiff's file to Mark Coby.   The record before this Court suggests Mark Coby's representation of Plaintiff was short-lived

Next, Defendants offer the May 1, 2001, letter of Thomas P. Fochs requesting review under 5. U.S.C.S. §8128(a), which provides:[4]

> §8128. Review of Reward
> (a) The Secretary of Labor may review an award for or against payment of compensation at any time on his own motion or on application. The Secretary, in accordance with the facts found on review, may-
> (1) end, decrease or increase the compensation previously awarded; or
> (2) award compensation previously refused or discontinued

*See*, Defs' **Ex. D**. Mr. Fochs' letter lays out five discreet issues for review - none of them concern whether Plaintiff should receive benefits based on journeyman status rather than apprentice status pursuant to 5 U.S.C. § 8113.[5]  *See,* Defs' **Ex D** at p. 2.  Even if this letter could be construed as the date when Plaintiff had notice of his claims, which it is not, Plaintiff did not know, and could not be expected to know of the potential for the erroneous pay calculations under 5 U.S.C. § 8113.  As discussed in herein and in Plaintiff's Opposition Memorandum, even if Plaintiff is charged with knowledge of his 5 U.S.C. § 8113 claim on May 1, 2001, he filed his Complaint before the statute of limitations period expired due to fraudulent concealment and the discovery rule.

---

[4] Mr. Fochs was a non-lawyer representative rather than Mr. Gallucci's lawyer - because he was not barred in California, his practice is limited to specific areas that did not require him to be licensed as an attorney.  Mr. Fochs, therefore only represented Plaintiff with respect to discrete areas rather than as a general attorney.

[5] The Fochs letter makes reference to Plaintiff's status as an Apprentice as opposed to a Journeyman and 5 U.S.C. § 8113, but this is not the basis for review that Mr. Fochs sought. Moreover, and as discussed herein, approximately eighteen months later, Mr. Gallucci spoke with an unknown associate attorney at Ashcraft & Gerel, LLC for forty minutes who denied that his lawfirm had done anything wrong or that he anything could be done to get him back-benefits. Decl.

As discussed in Plaintiff's Opposition Memorandum, his cause of action did not accrue until, at the earliest, July 16, 2004 - the date the Office of Workers Compensation issued the revised calculation for the total back-benefits due him.

Not only do Defendants utilize the attached letters from the file of the Office of Workers Compensation to draw the inference that Plaintiff knew of his claims before, but these inferences represent hotly contested issues of fact that are not appropriately decided on summary judgment.

Approximately eighteen months after Fochs May 1, 2001 letter, sometime in November 2002, Plaintiff contacted his law firm Ashcraft & Gerel, LLP for legal advise and to find out if Defendants made a mistake. Gallucci Decl. ¶ 13. Plaintiff spoke to an attorney from Ashcraft & Gerel, LLP for approximately 40 minutes. *Id*. The attorney Plaintiff spoke to told him they had done nothing wrong and that "there is nothing we can do to help you." *Id*. Plaintiff called Ashcraft & Gerel, LLP because he was seeking guidance regarding his workers compensation benefits. Of course, Defendants deny that this telephone call ever took place.[6] This alone is a material issue of fact sufficient to render summary dismissal inappropriate.

The statute of limitations is an affirmative defense and Defendants bear the burden of proving its existence. *E.g. Eriline Co., S.A., v. Johnson*, 2006 U.S. App. LEXIS 6621, *13 (4th Cir.). Defendants are not entitled to rely upon unsubstantiated inferences and conclusions drawn from the series of letters attached to their Motion to Dismiss in order to satisfy this burden. Moreover, Significant issues of material fact exist preventing summary judgment.

---

[6] "Plaintiff notes in his Complaint that he allegedly contacted the Defendant law firm in November 2002 and spoke with an unidentified associate for approximately forty minutes, discussing how he 'had been underpaid for over thirty years due to Mark Shaffer's failure to competently represent him." *See*, Def. Opp. Mem. FN 1.

6

## STANDARD OF REVIEW

### Motion to Dismiss Pursuant to 12(b)(6)

The Court's function in ruling on a Motion to Dismiss for Failure to State a Claim is not to weigh potential evidence that might present at trial, but to assess whether the Complaint alone is legally sufficient to state a claim for which relief may be granted, and in making this determination, the court may not look to other pleadings or documents to resolve factual disputes. *Swoboda v. Dubach* 992 F.2d 286 (10th Cir. 1993). The Complaint should not be dismissed unless it appears beyond doubt that Plaintiff's can prove no set of facts in support of their claims which would entitle them to relief. *LRL Properties v. Portage Metro Hous. Auth.* 55 F.3d 1097 (6th Cir. 1995). Motion to dismiss for failure to state a claim may be granted only in the clearest cases, and must be denied when additional facts are required before ultimate judgment may be arrived. *Swartz v. Eberly* 212 F.Supp 32 (ED Pa 1962).

### Summary Judgment

A motion for summary judgment cannot be granted unless the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits show that there is not genuine issue as to any material fact. FRCP 56. "A Motion for Summary Judgment should be scrutinized carefully in order that no litigant may be deprived of the opportunity to present proof in a proper case." *Tunstall v. Brotherhood, of Locomotive Fireman & Enginemen*, 69 F.Supp. 826 (D. Va. 1946). "On a motion for summary judgment, Court cannot try issues of fact; it can only determine whether there are issues of fact to try." *EEOC v. May & Co.*, 572 F.Supp. 536 (D. Ga. 1983). "Rule 56 relating to summary judgments should be cautiously invoked to end that parties may always be afforded where there is a bona fide dispute of facts between them." *Associated Press*

*v. United States*, 326 U.S. 1, (U.S. 1945).

Because this Court will consider matters outside the pleadings (exhibits attached to Defendants' Motion), the instant Motion will be treated as a Motion for Summary Judgment. Plaintiff appreciates the opportunity presented by this Court to file a Supplemental briefing presenting material made pertinent to such a motion by FRCP 56. Plaintiff respectfully submits that even if the Motion is transformed into a Motion for Summary judgment, Summary dismissal is not appropriate for the reasons stated herein.

## ARGUMENT

**A.     MATERIAL ISSUES OF FACT PREVENT SUMMARY JUDGMENT**

The Plaintiff and Defendant disagree on many of the material issues of fact. "If record on a motion for summary judgment present factual issues, court must not decide them; it must deny motion and proceed to trial. *Freedman v. United States*, 2003 U.S. Dist. LEXIS 3815 (D. Fla. 2003). "Where the discovery rule applies, the inquiry is highly fact bound and requires an evaluation of all of the plaintiff's circumstances." *Diamond v. Davis*, 680 A.2d 364 (D.C. 1996)

First, there is a dispute of material fact concerning when Plaintiff knew, or could have known of Defendants legal malpractice. Plaintiff's claim for legal malpractice accrued no earlier than July 16, 2004, when Plaintiff realized the full extent of his injury after the final downward adjustment of his compensation benefits. Gallucci Decl. ¶ 28. However, Defendants believe Plaintiff knew (or should have known) about his claims much earlier and attach several correspondence to the Office of Workers Compensation from Plaintiff or his agents. This material issue of fact

Second, there is significant issued of fact concerning whether the August 30, 1985 letter

from Plaintiff to Kathryn Holbrook at the Department of Labor, February 10, 1989, from William Gallucci to a Mr. Cain at the Office of Workers Compensation and a January 16, 1997 letter from attorney Mark Coby to the Office of Worker Compensation demonstrate Plaintiff knew of his claims against Defendants for legal malpractice. *See* **Defs Ex. A, Defs Ex. B** and **Defs. Ex. C**.

"Where depends upon resolution of conflicting inferences of fact which may be drawn from undisputed terms of writing, summary judgment is improper." *Goldinger v. Baron Oil Co.*, 375 F. Supp.  As discussed above, a close reading of the attached letters reveal that they have nothing to do with Mr. Gallucci's pay rate relative to his status as an apprentice when he was injured (his eventual claim before the Office of Workers Compensation). Moreover, Defendants draw numerous inferences for which they are not entitled at the summary judgment stage from the attached exhibits.

In his letter to Ms. Holbrook, Plaintiff discusses a medical examination, cost of living increases, compensation rate adjustment to reflect additional needs of children. *See*, Defs' **Ex A**. On page of the Memorandum, Defendants state "that on August, 20 1985, Plaintiff wrote a letter to Kathryn Holbrook at the Department of Labor in which he raised the issue of a discrepancy between his current wages and the wages being paid at the Department of Engraving and Printing." *Id*. However, a review of the letter reveals Plaintiff was inquiring into a benefit cut and obtaining what appears to he some sort of cost of living increase. *Id.*  Nothing in this letter comes close to suggesting Plaintiff knew he should receive benefits based on journeyman status rather than apprentice status pursuant to 5 U.S.C. § 8113.

Defendants also point to a letter Plaintiff wrote to Mr. Cain of the Office of Workers Compensation dated February 10, 1998, in which they allege he wrote that he was seeking retroactive benefits and had spoken to numerous attorneys. *See*, Defs' **Ex B**.  In actuality, Plaintiff

9

was complaining that he had spoken to many attorneys (about what, we don't know) but none would take his case and he was seeking retroactive compensation he thought was due him because of a wage earning decrease finding. *Id.* This letter has nothing to do with benefits under 5 U.S.C.S. § 8113.

Defendants also argue that the January 16, 1997 letter from attorney Mark Coby to the Office of Worker Compensation proves this attorney represented Plaintiff and that this person requested Plaintiff's complete file from the Department of Labor. *See*, Defs' **Ex C.** However, there is not evidence that Mr. Coby actually received the file, or any part thereof. *Id*. Furthermore, there is no evidence relating to what claims, if any, Mr. Coby asserted on behalf of Plaintiff. *Id*.

The earliest Defendants can seriously argue that Plaintiff could have known about his claims against Defendants is May 15, 2001, the date of Thomas O. Fochs' inquiry letter to the Office of Workers Compensation. Thus as of November 2002, Plaintiff's claims could not have accrued. However, any clue that Plaintiff had that Mr. Shaffer and Ashcraft & Gerel, LLP committed malpractice was subverted in November 2002, when Plaintiff had a forty minute conversation with an Ashcraft & Gerel, LLP attorney who attempted to convince Plaintiff that no wrongdoing occurred. Gallucci Decl. ¶ 13.

Lastly, there is a material issue of fact concerning whether Plaintiff had a telephone conversation with an Ashcraft & Gerel, LLP attorney in November 2002. Gallucci Decl. ¶ 13. In their Motion to Dismiss Defendants deny that this telephone call ever took place and state: "Plaintiff notes in his Complaint that he allegedly contacted the Defendant law firm in November 2002 and spoke with an unidentified associate for approximately forty minutes, discussing how he 'had been underpaid for over thirty years due to Mark Shaffer's failure to competently represent him." *See*,

Def. Opp. Mem. FN 1.

**B.    DEFENDANTS' DELIBERATELY CONCEALED THEIR WRONGDOING FROM PLAINTIFF THEREBY TOLLING THE STATUTE OF LIMITATIONS.**

Defendants deliberately acted to conceal their legal malpractice from Plaintiff therefore this Court should not allow them to raise the statute of limitations as a defense.

"Fraudulent concealment of the existence of a cause of action tolls the running of a conventional statute of limitations." *Weisberg v. Williams, Connolly & Califano*, 390 A.2d 992, 996 (D.C. 1978). "And in the legal malpractice field, there is widespread agreement that the statute will not run where the existence of a cause of action for legal malpractice has been fraudulently concealed by affirmative representations." *Id*. "Concealment will exist if the attorney has knowingly made false representations; it is only then that his conduct, by way of estoppel or otherwise, will toll the running of the statute." *Id*.

Defendants' respond to Plaintiff's claim of fraudulent concealment by claiming the November 2002, telephone conversation didn't occur. Plaintiff claims in his declaration that he contacted Defendants by telephone and discussed his claims for over forty minutes. Gallucci Decl. ¶ 13. Defendants denied any wrongdoing and told Plaintiff they could do nothing to help him. *Id.* Without any authority, Defendants also assert that Plaintiff must affirmatively plead the fraudulent concealment exception to the statute of limitations defense. This Court should reject this argument.

Defendants should not benefit from the actions to deliberately conceal their legal malpractice. "Where wrongful concealment of facts is alleged, a party responsible for such wrongful concealment is estopped from asserting the statute of limitations as a defense." *Farris v. Compton*, 652 A.2d 49 (D.C. 1994).

The statute of limitations is also tolled by the continuous representation rule. Under the

continuous representation rule for legal malpractice claims, when the injury to the client may have occurred during the period the attorney was retained, the malpractice cause of action does not accrue until the attorney's representation concerning the particular matter in issue is terminated. *R.H.D. Communs., v. Winston*, 700 A.2d 766 (D.C. 1997). Thus, in essence, under the continuous representation rule the cause of action is tolled until the attorney ceases to represent the client in the specific matter at hand. *Id.* It is anticipated that Defendants will argue that the passage of approximately 26 years prevents the imposition of the continuous representation rule. However, there is no evidence before this Court concerning when Defendants' ceased to represent Plaintiff. Moreover, Plaintiff obviously still considered Defendants to be his attorneys with respect to his benefits based on journeyman status rather than apprentice status pursuant to 5 U.S.C. § 8113. Plaintiff contacted Defendants to find out whether they committed malpractice and to see if they could fix the problem. Plaintiff's conduct indicated he placed some level of trust in Defendants as his attorney and looked to them to admit wrongdoing, and take action to fix his problem.[7]

**C.   PLAINTIFF'S MENTAL CAPACITY TOLLED THE STATUTE OF LIMITATIONS**

As discussed in Plaintiff's Complaint, Plaintiff suffers from a multitude of psychological problems stemming from his combat military duty.

> Tort and contract law recognize a need to protect persons who are victimized by those who abuse confidential relationships. Whether two parties are in a confidential relation is a fact-specific inquiry, but in general a confidential relationship arises when one party, having gained the trust and confidence of another, exercises extraordinary influence over the other party. Mental capacity, age, education,

---

[7] "An incorrect representation of law by an attorney to a layman provides a compelling basis for tolling the statute of limitations because lawyers are, or should be, regarded as possessed of knowledge and integrity beyond that of most of their fellows, certainly above the level of the market place." *Ray v. Queen*, 747 A.2d 1137 (D.C. 2000)

>business knowledge, and the extent to which the alleged victim entrusted her affairs
>to the other party are among the relevant factors in establishing the existence of such
>a relation.

*Goldman v. Bequai*, 305 U.S. App. D.C. 227 (D.C. Cir. 1994). As discussed in the Complaint, Plaintiff suffers from mental disabilities that have profoundly affected his ability to function. Plaintiff Suffers from post-traumatic stress disorder, serious personality disorder and difficulty with memory and concentration. These fact-intensive considerations can only properly be weighed by the trier of fact, and summary dismissal is inappropriate.

### D. THE EQUITABLE DOCTRINE OF LACHES WILL NOT BAR PLAINTIFF'S CLAIMS

There is a presumption that if the statute of limitations will not bar a claim then neither will the doctrine of laches. The equitable doctrine of Laches requires two elements to be proved: (1) an unreasonable and unexplained delay by one party, and (2) prejudice to the other party resulting from the delay. The party asserting the defense has the burden of asserting both elements. *American University Park Citizens Ass'n v. Burka* 400 A.2d 737, 740 (D.C. 1979). Issues of Laches is generally not properly decided on the basis of pleadings alone. *Webster v. Great American Ins. Co.* 544 F.Supp 609 (ED Pa 1982).

Here, there is no unreasonable or unexplained delay. Plaintiff wasted no time in following up with OWCP during the summer of 2002 when he brought the erroneous pay rate calculation to the attention of OWCP, and requested that the calculation be reviewed and corrected according to the provisions of 5 U.S.C. §§ 8113. Plaintiff did not sit on his rights or delay after he realized that his compensation payments should have been enhanced based on the progression of his apprentice class to journeyman status in accordance with 5 U.S.C. §§ 8113.

Moreover, Defendant can hardly be said to have been led to believe that Plaintiff's claims

were worthless or had been abandoned. Until approximately May 15, 2001, neither party was aware Plaintiff had a legal malpractice claim. Defendants' were put on notice that they probably committed legal malpractice when Defendant called Ashcraft & Gerel, LLP sometime in November of 2002 inquiring into whether they could fix the mess that Mr. Schaffer created. Defendants' used that opportunity to try and convince Plaintiff that no malpractice occurred. *Id.*

**E.    PLAINTIFF NEEDS TO TAKE DISCOVERY TO FULLY RESPOND TO DEFENDANTS MOTION FOR SUMMARY JUDGMENT**

Much of the pertinent discovery remains in the custody of Defendants. Plaintiff needs an opportunity to take discovery concerning the November 2002 telephone conversation that the unknown Ascraft & Gerel, LLP attorney had with Plaintiff. Specifically, Plaintiff should be given the opportunity to take discovery concerning the telephone bills and records for Ashcraft & Gerel, LLP during November 2002.[8] Additionally, Plaintiff should be allowed to depose the corporate representative for Ashcraft & Gerel, LLP and the attorney who talked with Plaintiff for forty minutes in November 2002 once his identity is ascertained. Defendants Motion should not be granted until Plaintiff has an opportunity to take discovery into matters only known, or in the possession of Defendants. *See*, Decl. Matthew H. Simmons.

**CONCLUSION**

For the foregoing reasons, the Plaintiff, respectfully request that the Defendants' Motion to Dismiss for Failure to State a Claim Upon Which Relief May be Granted should be denied.

Respectfully Submitted

---

[8] Amazingly, Defendants claim that there is no way to confirm the November 2002, telephone conversation occurred. *See,* Defs. Mem. at 4.

                           /s/ Matthew H. Simmons
                           Matthew H. Simmons, MD14700
                           Simmons & Associates, Chartered
                           7347 Wisconsin Avenue
                           Suite 200
                           Bethesda, Maryland 20814
                           (301) 986-8444

## **REQUEST FOR HEARING**

Plaintiff respectfully requests a hearing on Defendants' Motion to Dismiss.

                           /s/ Matthew H. Simmons

                           Matthew H. Simmons