UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

WILLIAM T. GALLUCCI              )
                                 )
          Plaintiff,             )
                                 )
     v.                          )     Civil Action No. 06-20 (GK)
                                 )
MARK L. SCHAFFER, et al.         )
                                 )
          Defendants.            )
_____ )

MEMORANDUM OPINION

Plaintiff William T. Gallucci alleges that Defendants, the law firm Ashcraft & Gerel, LLP and three of its lawyers, committed malpractice in 1976 when they failed to advise him that his workers' compensation had been calculated incorrectly. This matter is now before the Court on Defendants' Motion to Dismiss [Dkt. No. 4]. Upon consideration of the Motion, Opposition, Reply, Supplemental Memorandum, Response to Supplemental Memorandum, and the entire record herein, and for the reasons stated below, Defendants' Motion is **granted**.

I. BACKGROUND

A. Facts[1]

On July 9, 1972, Plaintiff started a 48-month apprenticeship program at the Bureau of Engraving and Printing ("Bureau"). If he had completed the program, he would have had the opportunity to

_____

[1] Unless otherwise noted, the facts set forth herein are undisputed.

advance to the position of a plate printer on July 9, 1976. Approximately nine months into the program, on April 23, 1973, Plaintiff injured his hip and back at work.

In October 1973, Plaintiff retained Defendant Mark L. Schaffer ("Schaffer") of Ashcraft & Gerel, LLP to represent him in workers' compensation proceedings before the Department of Labor's Office of Workers' Compensation Programs ("OWCP"). OWCP approved Plaintiff's application for workers' compensation based on the pay rate for an apprentice printer and Plaintiff began receiving monthly payments. In 1975, Plaintiff sought a hearing on OWCP's calculation of his loss of wage earning capacity ("LWEC") to establish the baseline payments he would receive from that time forward. OWCP affirmed its initial calculation on July 13, 1976. On August 19, 1976, OWCP informed Plaintiff that its decision was final and appealable.

Plaintiff claims that the OWCP's calculation was incorrect. He argues that the Federal Employees Compensation Act ("FECA"), 5 U.S.C. § 8113 ("§ 8113"), entitles federal employees who are apprentices at the time of a work-related injury to be compensated as though they had progressed through the normal hierarchy of their trade. Because he was an apprentice at the time of his injury, Plaintiff claims that, pursuant to § 8113, he was entitled to a higher baseline pay beginning July 9, 1973, and each year thereafter, when he would have advanced to the next year of apprenticeship. He further claims that because his apprenticeship

-2-

would have ended on July 9, 1976, his workers' compensation should have increased on that date to account for the pay level of a plate printer.

After receipt of the OCWP's July 13, 1976 decision, Plaintiff asked Schaffer why the LWEC calculation was so low.  He claims that Schaffer advised him that it would be pointless to fight the OWCP's determination.  He further claims that Schaffer did not inform him of any rights to increased payments under § 8113.

Almost 25 years later, on May 15, 2001, an individual unconnected to Defendants,[2] Thomas P. Fochs ("Fochs"), sent a letter on Plaintiff's behalf to the OWCP.[3]  Fochs's letter stated that "Mr. Gallucci objects to the Loss of Wage Earning Capacity Determination of February 21, 1975. . . ." Def.'s Mot. Ex. D ("May 15, 2001 Letter") at 1.  The May 15, 2001 Letter further stated that

> Mr. Gallucci is entitled to an increased rate of compensation under 5 USC §8113(a) of the FECA because he was in a 'learners' position at the time of his injury. Consequently, the OWCP erred by failing to pay Mr. Gallucci an increased rate of pay because his injury

---

[2] Although the letter is signed "Thomas P. Fochs, PC, Attorney at Law," Plaintiff indicates in his Opposition that Fochs was not barred at the time of his letter to the OWCP, and therefore "was a non-lawyer representative."  Defs.' Mot. Ex. 5 ("May 15, 2001 Letter") at 38; Pl.'s Opp'n at 3 n.7.

[3] Between September 1976 and May 2001, Plaintiff sent two letters to the Department of Labor and one letter to the OWCP regarding his workers' compensation.  The parties dispute whether those letters show that Plaintiff knew of the allegedly erroneous calculation of his benefits at the time he wrote them.

-3-

> prevented him from obtaining the higher-paying position
> he would have achieved at the end of his formal four-year
> Apprentice Program at the Bureau of Engraving and
> Printing.

Id. at 33.  To correct that alleged error, the letter requested
that the OWCP "re-compute Mr. Gallucci's Date of Injury wage rate
because he was in a 'learner's position' under 5 USC §8113(a), and
pay the unpaid compensation owed him . . . ."  Id. at 38.

Plaintiff claims that, on October 15, 2002, OWCP issued a
preliminary finding that the pay rate used in Plaintiff's case was
erroneous, based on § 8113 and longstanding Department of Labor
policy.[4]  According to Plaintiff, OWCP concluded in its preliminary
finding that Plaintiff's "compensation payments for the time period
beginning on July 13, 1976 previously should have been, and
prospectively should be, based on the pay rate for a journeyman
printer, not an apprentice printer."  Pl.'s Supp. Mem. Ex. 1
("Gallucci Decl.") at ¶ 15.

Plaintiff claims that in November 2002, after the OWCP's
preliminary finding on October 15, 2002, he called Defendant
Ashcraft & Gerel, LLP "and spoke with an attorney from the firm for
around forty minutes.  During this conversation, [Plaintiff]
detailed how [he] had been underpaid for over thirty years due to
Mark Schaffer's failure to competently and thoroughly represent

---

[4] Neither party has filed the OWCP's October 15, 2002 findings
with the Court.  Defendants do not address Plaintiff's claims
regarding the October 15, 2002 findings in any of their papers.

-4-

[him].  At the conclusion of the conversation the attorney told [Plaintiff] that 'there was nothing they can do to help [him].'" Gallucci Decl. at ¶ 13.  Defendants deny that any such conversation occurred.

Plaintiff claims that the Bureau of Engraving has resisted paying his recalculated workers' compensation.  He further claims that OWCP has twice calculated the amount of back-benefits owed to him.  On May 21, 2003, OWCP calculated that the amount of back-benefits owed for the period from August 13, 1981 to September 9, 2000 due to the pay rate error was $828,980.11.  On July 16, 2004, OWCP issued a revised calculation in which it concluded that Plaintiff was entitled to total back-benefits of $661,223.96 for all time periods.  OWCP paid Plaintiff a total of $661,223,96.

## B.  Procedural History

Plaintiff filed the Complaint in this case on January 9, 2006. By virtue of a tolling agreement between the parties, however, the lawsuit is deemed to have been filed on April 27, 2005.  See Def.'s Mot. at 4 n.2.  Plaintiff's Complaint alleges in Count I that Schaffer committed professional malpractice by failing to advise him of his right to higher pay under § 8113 and failing to invoke these rights on his behalf.  Count II alleges that Schaffer breached his fiduciary duty by failing to advise him of his rights under § 8113.  Plaintiff sues Defendants Gerel, Mannino, and Ashcraft & Gerel, LLP on the theory that they are vicariously

-5-

liable for Schaffer's malpractice and breach of fiduciary duty. He seeks $3,500,000.00 in compensatory damages, plus interest and costs, under each Count.

Defendants have moved to dismiss Plaintiff's Complaint on the grounds that the suit is barred by the statute of limitations and the doctrine of laches, and that Plaintiff was never entitled to pay increases as a matter of law. Defendants attached to their Motion to Dismiss several exhibits necessary to resolve the statute of limitations question. Accordingly, the Court has converted the Motion to Dismiss into a motion for summary judgment as required by Rule 12(b) of the Federal Rules of Civil Procedure, and gave both parties further opportunity to brief the issues raised in the Rule 56 motion.

## II. STANDARD OF REVIEW

Where, as here, the Court must consider "matters outside the pleading" to reach its conclusion, a Motion to Dismiss "must be treated as one for summary judgment and disposed of as provided in Rule 56." Fed. R. Civ. P. 12(b); see Yates v. District of Columbia, 324 F.3d 724, 725 (D.C. Cir. 2003).

Summary judgment should be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits or declarations, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56.

-6-

Material facts are those that "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The nonmoving party then must "go beyond the pleadings and by [its] own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324.

## III. ANALYSIS

### A.   Plaintiff's Cause of Action Accrued By May 15, 2001

In the District of Columbia, the statute of limitations governing a legal malpractice claim is three years. Wagner v. Sellinger, 847 A.2d 1151, 1154 (D.C. 2004); see D.C. Code § 12-301(8). "The statute of limitations for a legal malpractice claim is governed by the discovery rule in cases where the relationship between the fact of injury and some tortious conduct is obscure at the time of injury." R.D.H. Commc'ns v. Winston, 700 A.2d 766, 768 (D.C. 1997). Under the discovery rule, "a claim does not accrue until a plaintiff knows, or by the exercise of reasonable diligence should know, of (1) an injury, (2) its cause, and (3) some evidence of wrongdoing." Wagner, 847 A.2d at 1154 (internal citation omitted). Because Plaintiff's lawsuit is deemed to have been filed

on April 27, 2005, his claims are barred unless they accrued on or
after April 27, 2002.

Plaintiff concedes that he had knowledge of the alleged injury
in this case (the wrongly-calculated workers' compensation) and the
cause (the alleged malpractice) at least by May 15, 2001, when
Fochs wrote to the OWCP.  Pl.'s Opp'n at 13.  As to evidence of
wrongdoing, Plaintiff also concedes that he consulted with Schaffer
in 1976, after the OWCP affirmed its calculation, and claims that
Schaffer told him fighting OWCP for increased benefits would be
"pointless."  Compl. ¶ 24.  That consultation, together with
Plaintiff's knowledge in May 2001 of the possibility that § 8113
entitled him to greater compensation, gave Plaintiff "some evidence
of [Defendants'] wrongdoing."  Wagner, 847 A.2d at 1154.
Accordingly, Plaintiff's cause of action accrued at least by May
15, 2001.

Plaintiff claims, however, that his cause of action did not
accrue until he knew the full extent of his injury, when OWCP
issued its revised calculation on July 16, 2004.  Plaintiff's
argument, unsupported by any authority, has been squarely rejected
in this jurisdiction.  Under District of Columbia law, a plaintiff
need not sustain or identify all his damages for a cause of action
to accrue.  Ideal Elec. Security Co. v. Brown, 817 A.2d 806, 809
(D.C. 2003).  "Any appreciable and actual harm flowing from the
defendant's conduct is sufficient" for a cause of action to accrue.

-8-

Id. (emphasis added).

Plaintiff claims that he has been underpaid, and consequently suffering injury, since OWCP's allegedly erroneous determination on August 19, 1976. Accordingly, Plaintiff knew of his injury when he became aware of his allegedly insufficient workers' compensation payments, at least by May 15, 2001.[5]

**B.    The Statute of Limitations Was Not Tolled**

Plaintiff raises three arguments that the statute of limitations was tolled: (1) Defendants fraudulently concealed their malpractice, (2) Defendants continued to represent Plaintiff until at least November 2002, and (3) Plaintiff's mental capacity hindered his ability to function.  Neither case law nor evidence supports any of Plaintiff's tolling arguments.

First, Plaintiff argues that the statute of limitations does not bar his action because Defendants fraudulently concealed their malpractice.  Specifically, Plaintiff claims that his November 2002 telephone conversation with an unidentified individual at Ashcraft & Gerel LLP, during which that individual told Plaintiff that "there is nothing more we can do for you," constituted fraudulent concealment of Defendants' malpractice.  Plaintiff misconstrues the fraudulent concealment doctrine.

_____

[5] Because the Court concludes that the statute of limitations bars Plaintiff's claims, it need not reach Defendants' arguments that the doctrine of laches bars Plaintiff's suit or that Plaintiff was never entitled to increased workers' compensation payments.

Fraudulent concealment tolls the statute of limitations on a cause of action when "the conduct of a fiduciary is alleged to have lulled the plaintiff into failure to protect his interests within the statutory limitations period." Ray v. Queen, 747 A.2d 1137, 1142 (D.C. 2000); see also Johnson v. Long Beach Mortgage Loan Trust 2001-4, 451 F. Supp. 2d 16, 51-52 (D.D.C. 2006). "The doctrine of fraudulent concealment does not come into play, whatever the lengths to which a defendant has gone to conceal the wrongs, if a plaintiff is on notice of a potential claim." Diamond v. Davis, 680 A.2d 364, 377 (D.C. 1996) (internal quotation omitted); see also Cevenini v. Archbishop of Washington, 707 A.2d 768, 774 (D.C. 1998) ("[I]t is a well established defense to a claim of fraudulent concealment . . . that the plaintiff knew, or by the exercise of due diligence could have known, that he may have had a cause of action.").

As discussed above, Plaintiff was on notice of the alleged malpractice at least as early as May 15, 2001. Any subsequent misrepresentations by Defendants do not overcome such notice.[6]

Second, Plaintiff argues that because he "obviously considered Defendants to be his attorneys" and "indicated that he placed some

---

[6] Even if Plaintiff were not on notice prior to the November 2002 call, he provides no facts showing any misrepresentation intended to conceal the existence of a possible cause of action. The mere statement that "there is nothing more we can do for you" is not sufficient to support a finding of fraudulent concealment of legal malpractice.

level of trust in Defendants as his attorney and looked to them to admit wrongdoing" when he contacted Ashcraft & Gerel, LLP in November 2002, the statute of limitations was tolled at least until that time.  Pl.'s Suppl. Mem. at 12.

Under the continuous representation rule, a claim for legal malpractice "does not accrue until the attorney's representation concerning the particular matter in issue is terminated." Bradley v. NASD Dispute Resolution, Inc., 433 F.3d 846, 850 (D.C. Cir. 2005) (quoting Winston, 700 A.2d at 768).  The scope of the "particular matter in issue" extends to a final, appealable decision, but does not include appeals. Id. at 851 ("The court in Winston also set an outer bound on the duration of the 'specific dispute'--it does not include appeals.") (citing Winston, 700 A.2d at 770-71; and Knight v. Furlow, 553 A.2d 1232, 1235 (D.C. 1989)).

The particular matter in issue in Defendants' representation of Plaintiff was the application to OWCP for federal workers' compensation benefits.  That particular matter ended, for purposes of the continuous representation rule, on August 19, 1976 when OWCP informed Plaintiff that its ruling was final and appealable. Plaintiff alleges no contact with any of the Defendants between his 1976 conversation with Schaffer and the November 2002 telephone call.  He offers no evidence raising a disputed issue of fact about whether Defendants continued to represent him on related matters after the 1976 conversation with Schaffer.  Accordingly, the

continuous representation rule does not apply to toll the three-year statute of limitations on Plaintiff's claims.

Third, Plaintiff argues that the statute of limitations should be tolled due to his "multitude of psychological problems stemming from his military combat duty." Pl.'s Supp. Mem. at 12. Those problems, he claims, include "post-traumatic stress disorder, serious personality disorder and difficulty with memory and concentration." Id. at 13.

The statute of limitations for a claim is tolled if a plaintiff is non compos mentis, i.e. "incapable of handling their own affairs or unable to function [in] society." Oparaugo v. Watts, 884 A.2d 63, 73 (D.C. 2003) (internal citation omitted); see D.C. Code § 12-302. "A person is mentally unsound for purposes of tolling civil statute of limitations when the 'disability is of such a nature as to show [that a plaintiff] is unable to manage [his] business affairs or estate, or to comprehend [his] legal rights or liabilities.'" Burnett v. Sharma, No. 03-2365 and 06-0037, 2007 U.S. Dist. LEXIS 24182, at *24-25 (D.D.C. Mar. 30, 2007) (quoting McCracken v. Walls-Kaufman, 717 A.2d 346, 354 (D.C. 1998) (internal citations omitted)); see also Smith-Haynie v. District of Columbia, 155 F.3d 575, 580 (D.C. Cir. 1998). "Impaired judgment alone is not enough to toll the statute of limitations." Hendel, 705 A.2d at 665. "Although a defendant bears the burden of pleading and proving failure to . . . timely file an action in

court, once defendant's burden has been met, a plaintiff must establish his eligibility to invoke equitable tolling." Gupta v. Northrop Grumman Corp., 462 F. Supp. 2d 56, 59 (D.D.C. 2006) (citing Saltz v. Lehman, 672 F.2d 207, 209 (D.C. Cir. 1982)) (other internal citations omitted).

Plaintiff has presented no evidence that his injuries meet this standard. Beyond the unverified Complaint and Plaintiff's pleadings, which are accorded no evidentiary weight in deciding a summary judgment motion, see Fed. R. Civ. P. 56(c), the only information in the record regarding Plaintiff's mental state is the following paragraph in his Declaration: "I am a decorated Vietnam veteran. I served in Vietnam for 13 months from 1969-70. I was physically injured there during night patrol." Pl.'s Supp. Mem. Ex. 1 (Gallucci Decl.) at ¶ 2.

The paragraph in Plaintiff's Declaration says nothing about his ability to handle his affairs, function in society, manage his business affairs or estate, or comprehend his legal rights or liabilities. See Oparaugo, 884 A.2d at 7; Burnett, 2007 U.S. Dist. LEXIS 24182, at *24-25. There is no evidence tending to show that his mental capacity makes him unable to handle his affairs or understand his legal rights. Nor is there any evidence that Plaintiff has been diagnosed by a mental health professional with post-traumatic stress disorder or serious personality disorder, or that he has difficulty with memory and concentration. To the

contrary, the evidence shows that Plaintiff wrote letters on his own behalf to dispute aspects of his compensation and discussed with Defendants his right to increased benefits and his claim for legal malpractice in the November 2002 phone call. Accordingly, the Court finds that Plaintiff has failed to present evidence raising a genuine issue as to his mental capacity.

**IV. CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss [Dkt. No. 4], which the Court has converted into a motion for summary judgment, is **granted.** An Order will issue with this Memorandum Opinion.


August 28, 2007                           /s/
                                   Gladys Kessler
                                   United States District Judge


**Copies to**: **attorneys on record via ECF**